# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01777-SCT

*SIDNEY L. STALLWORTH a/k/a SIDNEY LAVERN STALLWORTH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/06/1999 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LISA D. COLLUMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 3/08/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/29/2001 |

**BEFORE PITTMAN, C.J., COBB AND DIAZ, JJ.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This is an appeal from a judgment of the Circuit Court of Harrison County, Mississippi in which Sidney L. Stallworth ("Stallworth") was convicted by a jury of the crime of murder and sentenced as a habitual offender to life imprisonment without possibility of parole or early release. Stallworth moved for a directed verdict both during and at the conclusion of the trial. The trial judge denied the motions. Following the entry of the final judgment, Stallworth filed a Motion for New Trial. The motion was denied, and Stallworth filed a notice of appeal to this Court.

## STATEMENT OF FACTS

¶2. Bridget Shields ("Bridget") was stabbed to death in her home at the "Kim/K Apartments" in Gulfport, Mississippi on November 8, 1998.

¶3. Yolanda Mullins ("Mullins"), a resident of the "Kim/K Apartments," was awakened by the sound of screams and cries for help emanating from Bridget's apartment. She testified that she recognized the voice as Bridget's. Mullins dressed and then ran out her door to the stairs. She then heard Bridget's door open,

became frightened, and ran back inside her apartment. After waiting for what she described as some fifteen seconds, Mullins opened her door and ran upstairs to use another resident's telephone. Mullins stated that from her apartment window, she was unable to see if anyone entered or exited Bridget's apartment.

¶4. Gayle Williams ("Williams") was the 911 operator on duty with the Gulfport Police Department on the morning of the murder. She received a call from the Harrison County Sheriff's Department regarding a complaint that had been called in from the Kim/K Apartments. Williams dialed the telephone number given to her by the Sheriff's Department, and engaged in a taped conversation with Bridget Shields. A recording of the phone call was introduced into evidence at the trial and played for the jury.[1] Based upon the conversation between Williams and Bridget, the Gulfport Police Department began searching for Stallworth. An officer arrived at Bridget's apartment at 9:59 a.m.

¶5. The first officer on the scene was Officer James Roberts ("Roberts"). Upon entering the apartment, Roberts found the body of Bridget Shields which exhibited multiple stab wounds. A later autopsy revealed that Bridget had been stabbed seventeen times in the upper body, on both her chest and back areas, and that she had received blunt injuries to her face. While at the scene, Roberts did not observe any weapons, nor were any recovered.

¶6. Chuck Horne was employed by the Gulfport Police Department as a property officer, evidence custodian, and crime scene investigator. He was dispatched to the crime scene on the morning of the murder. Among the items he found and took into custody were a restraining order against Stallworth, two blue cups located on either side of the bed, and an envelope marked "Sidney." Horne testified that no fingerprints of value were found in the apartment. Horne also testified that there was a blood spray or splatter on the front door of the apartment and on the mini-blinds on the window. Photographic evidence revealed that when arrested on the day of the murder, Stallworth was wearing the same shirt he had been wearing when released from jail earlier that day. The State offered no testimony that blood was found on Stallworth's shirt.

¶7. At approximately 11:00 p.m. on the night of the murder, Stallworth called Bruce Carver, Sr. ("Carver"), a Captain with the Harrison County Sheriff's Department. The record reveals that the two men had developed a friendship over the last twelve to fourteen years. Stallworth told Carver that he had heard on television that he was wanted for murder and asked Carver to come pick him up in Biloxi. At this time, Carver was advised by the sheriff that Stallworth was wanted on a homicide charge. Carver and Sergeant Nick Cheatham ("Cheatham) drove to Biloxi to pick up Stallworth and took Stallworth to the Gulfport Police Department. During the drive, Stallworth allegedly made several statements to Carver, the content of which will be addressed in the discussion of Issue II below.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF PRIOR BAD ACTS PURSUANT TO MISS. R. EVID. 404(b).

¶8. The standard of review regarding admission or exclusion of evidence is an abuse of discretion standard. *Floyd v. City of Crystal Springs*, 749 So.2d 110, 113 (Miss. 1999); *Thompson Mach. Commerce Corp*. **v.** *Wallace*, 687 So.2d 149, 152 (Miss.1997). Where error involves the admission or exclusion of evidence, this Court "will not reverse unless the error adversely affects a substantial right of a party." *In re Estate of Mask*, 703 So.2d 852, 859 (Miss. 1997); *Terrain Enters., Inc. v. Mockbee*, 654 So.2d

1122, 1131 (Miss. 1995).

¶9. On October 24, 1998 (fifteen days before the murder), Stallworth was charged with domestic violence and resisting arrest. The charge resulted from an incident where Stallworth threatened Bridget Shields with a knife in her apartment. Stallworth was convicted of domestic violence on October 30, 1998, and received a sentence of 180 days in jail, with 150 of those days suspended. He was to serve 30 days; however, Stallworth received two days credit for every one day served. Bridget Shields was killed the day Stallworth was released from jail. Additionally, an inmate who had served time with Stallworth testified at trial that Stallworth told him he was in jail because of a charge by his "old lady" of domestic violence, and that "when he got out he was going to beat that bitch's ass."

¶10. Generally "evidence of a crime other than the one for which the accused is being tried is not admissible." *Smith v. State*, 724 So.2d 280, 313 (Miss. 1998). Miss. R. Evid. 404(b) provides an exception to the general rule in that it allows the introduction of evidence of extrinsic acts to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Smith*, 724 So.2d at 313. Stallworth argues that the trial court erred in admitting the prior conviction for three reasons.

¶11. He first claims that the only reason the State sought to introduce the prior conviction was for the purpose of showing that since he had previously been convicted with domestic abuse against Bridget, he must certainly have been the person who killed her. The State asserts that its intent in introducing the evidence of Stallworth's prior conviction was to establish motive, intention, and possibly identity- - -all permissible uses under Rule 404(b).

¶12. Secondly, Stallworth claims that the prior conviction should have been excluded under Miss. R. Evid. 403, as its prejudicial effect substantially outweighed whatever probative value it might have had. The State claims that the trial court fulfilled its requirement of carefully considering the probative value of the evidence against any potential for "undue prejudice."

¶13. The third part of Stallworth's argument tracks the language in *Townsend v. State*, 681 So.2d 497, 506 (Miss. 1996), where this Court stated that:

> Evidence of another offense is admissible if that offense is so clearly interrelated to the charged crime as to form a single transaction or closely related series of transactions. *Mackbee v. State*, 575 So.2d 16 (Miss. 1990). It must be integrally related to time, place, and fact to that for which defendant stands trial. *McFee v. State*, 511 So.2d 130 (Miss. 1987). In other words, the evidence is essential for telling the total, rational, and coherent story. *Hurns v. State*, 616 So.2d 313 (Miss. 1993).

*Townsend*, 681 So.2d at 506. Stallworth contends that the prior domestic violence conviction was not part of a series of closely related acts comprising the same act, that it was not necessary for the State to reveal this evidence to the jury in order to tell the complete story of Bridget's death, and that the evidence was not so interwoven with Bridget's death that it could not be separated from the details of her death. The State argues that due to the intimate relation between the domestic violence offense and the subsequent murder, the evidence cannot possibly be viewed as remote or unduly prejudicial. The State also claims that the murder can easily be viewed as a continuation by Stallworth of the assault he began fifteen days earlier.

¶14. Prior to the trial, defense counsel filed motion in limine to exclude evidence of Stallworth's prior

conviction for domestic violence against Bridget Shields. The trial judge denied the motion, ruling that the evidence fell within the motive exception, and possibly others, to Miss. R. Evid. 404(b). The trial court stated specifically that:

> All right. We have the defendant being charged on October 24 with domestic violence on Bridget Shields, threatening, grabbing her, him grabbing a knife, stating that he would cut her head off if she called the police. He is convicted on October 30, some six days later. Ends up serving fifteen days in jail, is released from jail on November the 8th in the morning. And less than, apparently an hour or two later this incident occurred and Ms. Shields was killed.

> The Court is of the opinion that this is relevant to show possible motive. And it might easily show motive, opportunity, intent, preparation, plan- - -I mean, about all of the 404(b) exceptions to allow it in.

> The Court is also of the opinion that since this occurred within an hour or so upon release, that the domestic violence incident October 24th and him being released the morning of November 8th, the Court is of the opinion that they are so interconnected to be considered part of the same transaction.

The trial court stated that while, "obviously, this [evidence] is prejudicial...since they do appear to be so interconnected and to show motive, et cetera, identity, et cetera...[the evidence] is admissible as being more probative than prejudicial."

¶15. Regarding Stallworth's first two contentions, the evidence of Stallworth's prior conviction does fall under the listed exceptions in Rule 404(b), and the evidence did pass muster under the balancing test of Rule 403. The trial court properly admitted the prior conviction evidence under Rule 404(b) because it indicated a possible motive, and because it possibly showed opportunity, intent, preparation, plan, and identity. Furthermore, the trial court made an on-the-record finding regarding relevancy under Rule 403, and carefully considered the probative value of the evidence against any potential for "undue prejudice." It is in the trial judge's discretion to determine the relevancy of the evidence, and his decision will not be reversed unless there is a clear abuse of discretion. *Bounds v. State*, 688 So.2d 1362, 1369 (Miss. 1997).

¶16. Stallworth's third contention is also without merit. In *Webster v. State*, 755 So.2d 451, 457 (Miss. Ct. App. 1999), the defendant argued that testimony regarding a fight that took place approximately one year earlier between him and the murder victim should not have been admitted by the trial court because the event was too remote in time. This Court upheld the Court of Appeals' ruling that the evidence regarding the prior violent act was not too remote in time from the subsequent murder. *Webster v. State*, 754 So.2d 1232, 1238-39 (Miss. 2000). When making his ruling to admit the evidence in the case sub judice, the trial judge stated that:

> The Court is also of the opinion that since this occurred within an hour or so upon release, that the domestic violence incident October 24th and him being released the morning of November 8th, the Court is of the opinion that they are so interconnected to be considered part of the same transaction.

These facts were known to the trial judge at the time he made his ruling: the victim of the two crimes was the same, a knife was involved in both crimes, Stallworth was alleged to have committed the murder within two hours of his release from prison on the domestic violence conviction, and an allegation had been made that Stallworth expressed his intention to seek revenge upon his victim while in prison. Given these facts, the trial

judge did not abuse his discretion by ruling that Stallworth's prior conviction was "interconnected" with the charged crime and was therefore admissible.

### II. WHETHER THE TRIAL COURT ERRED IN DENYING A MOTION TO SUPPRESS INCRIMINATORY STATEMENTS MADE BY STALLWORTH.

¶17. Prior to the trial, Stallworth filed a motion to suppress certain statements he gave to officers of the Harrison County Sheriff's Office. Stallworth asserts that incriminating statements he made to Captain Bruce Carver should not have been admitted because he was not properly advised of his *Miranda* rights and because the statements were not voluntary.

¶18. The applicable standard for determining whether a confession is voluntary is "whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." *Herring v. State*, 691 So.2d 948, 956 (Miss. 1997); *Porter v. State*, 616 So.2d 899, 907-08 (Miss.1993). This Court has stated that, "[i]n determining whether a confession is freely and voluntarily given the circuit court judge sits as a trier of fact," *McCarty v. State*, 554 So.2d 909, 911 (Miss.1989), and this Court should not reverse unless the circuit judge is manifestly wrong. *Balfour v. State*, 598 So.2d 731, 742 (Miss.1992) (collecting authorities).

¶19. At approximately 11:00 p.m. on the night of the murder, Stallworth called Captain Bruce Carver from Biloxi and told Carver that he wanted to turn himself in. Stallworth testified that he had known Carver for around twelve to fourteen years and considered Carver to be a friend. Stallworth testified that he called Carver to come pick him up because, "[he] was wanted for murder and...felt that...[he] needed someone that [he] knew." Sergeant Nicholas Cheatham ("Cheatham") drove Carver to meet Stallworth. Cheatham testified that when he and Carver arrived at the scene, they told Stallworth he was under arrest, handcuffed him, and read him his *Miranda* rights. The exact timing of the *Miranda* advisement is disputed, though, as Stallworth testified that Cheatham did not read him his *Miranda* rights until he was placed in the car. Stallworth objects to Carver's testimony regarding the following statements allegedly made by Stallworth while being transported to Gulfport:

> Q. What did you and Officer Cheatham do upon your arrival?
>
> A. ...I told him I would have to search him. And he said, I don't have the weapon on me.
>
> Q. Describe for the jury exactly what types of things and what he was saying to you?
>
> A. He was just saying that if he was convicted of this, he would get life, and he would be in jail the rest of his life.
>
> Q. Did he say anything to the effect that he had snapped or lost it?
>
> A. ...I said what happened, he said I think I snapped.

At the time Stallworth allegedly made these statements to Carver, he was sober and he was aware that he was speaking with law enforcement officers. Additionally, no promises of leniency or threats were made to induce Stallworth to speak. During the trial, Carver testified that he told Stallworth to wait until he was taken in by the Gulfport Police to make a statement.

¶20. Defense counsel also contests the admissibility of certain statements made by Stallworth to Carver approximately one week after Stallworth had been booked into the jail on the murder charge. Prior to these particular statements, Stallworth had already participated in an initial appearance, and an attorney had been appointed to him. Carver testified that he makes himself accessible to inmates and that it was routine for inmates to come into his office to make complaints and/or requests.

¶21. Carver further stated that Stallworth walked into his office and asked if he could speak with Carver. Stallworth allegedly told Carver that the police "might be looking in the wrong place" for the murder weapon, and that they should look "[b]y the doctor's office dumpster." The record does not indicate that the weapon was ever found. When asked at trial whether Stallworth had said anything about how the murder occurred, Carver testified that, "[h]e said she grabbed a knife and he had to- - -and he grabbed one and defended himself." Carver did not attempt to prevent Stallworth from speaking or to warn him of potential consequences of his statements.

¶22. In overruling Stallworth's motion to suppress, the trial court noted that "by the defendant's own admission, there were no forces, promises, threats, acts of coercion, violence, duress, undue influence, et cetera, placed on him." The trial judge heard evidence that Stallworth had been informed of his *Miranda* rights. The record indicates that neither Carver nor Cheatham interrogated Stallworth about his involvement in the crime, and that Stallworth spoke freely without prompting by the officers. The trial court ruled that "it appears all but uncontradicted that these were spontaneous statements by the defendant, not- - -and not subject - - -and not as a result of questioning by either Carver or Cheatham."

¶23. Volunteered, unprompted statements are admissible, even if the *Miranda* advice has not been first given. *Edwards v. State*, 615 So.2d 590, 597 (Miss. 1993). Further, law enforcement officers are not required to turn a deaf ear to such statements, nor are they required to stop the arrestee and advise him of his rights. *Ricks v. State*, 611 So.2d 212, 214 (Miss. 1992).

¶24. Defense counsel argues that Stallworth's statements were not freely and voluntarily made because the apparent friendship between Stallworth and Carver created a "compelling influence" on Stallworth. Stallworth cites *Dunn v. State*, 547 So.2d 42 (Miss. 1989), and argues that "[w]hile it is not contended that Capt. Carver made any comments similar to those made by the Sheriff in *Dunn*, it is evident that the relationship certainly had a 'compelling influence' upon Stallworth." The State counters that the case at bar presents no suggestion of a relationship being used to compel an incriminating statement. In *Dunn*, the police chief promised to do whatever he could to help the defendant, and told the defendant that he would be "better off" if he would make a statement to the police. *Id.* at 43-44. It is well-settled in Mississippi jurisprudence that a confession given after promises of leniency is incompetent evidence. *See, e.g.*, *Matthews v. State*, 102 Miss. 549, 59 So. 842 (1912); *Johnson v. State*, 42 So. 606 (Miss. 1907); *Mitchell v. State*, 24 So. 312 (Miss. 1898). Stallworth's argument is not that Carver promised him leniency in exchange for a confession; rather, that because of their apparent friendship, Carver in some way compelled Stallworth to make statements.

¶25. Mississippi jurisprudence does not support the claim that a friendship between a defendant and a law enforcement officer necessarily results in a "compelling influence" on the accused. Stallworth's reliance on *Dunn* is misplaced. The record indicates that Carver did not in any way attempt to use his friendship with Stallworth to compel him to make a statement. On the contrary, the record clearly indicates that Stallworth volunteered the statements to Carver. Unlike the police official in *Dunn*, Carver never offered to help

Stallworth, did not enjoin him to confess his involvement, and did not in any way interrogate Stallworth about the murder.

¶26. The trial judge made well-reasoned findings and determined that the statements were admissible. Accordingly, the trial judge did not abuse his discretion in admitting Stallworth's statements.

### III. WHETHER INSUFFICIENT EVIDENCE EXISTS FROM WHICH REASONABLE JURORS COULD HAVE FOUND STALLWORTH GUILTY OF THE CHARGE OF MURDER.

### IV. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING STALLWORTH'S MOTION FOR DIRECTED VERDICT OR IN THE ALTERNATIVE HIS MOTION FOR A NEW TRIAL.

¶27. In his last assignment of error, Stallworth argues that the trial court erred in denying both his motion for a directed verdict and his motion for a new trial due to insufficiency of the evidence. In reviewing this claim, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. *Esparaza v. State*, 595 So.2d 418, 426 (Miss. 1992); *Wetz v. State*, 503 So.2d 803, 808 (Miss. 1987); *Harveston v. State*, 493 So.2d 365, 370 (Miss. 1986). Furthermore, the credible evidence consistent with the defendant's guilt must be accepted as true, and the prosecution must be given the benefit of all favorable inferences which may be reasonably drawn from the evidence. *Collier v. State*, 711 So.2d 458, 461 (Miss. 1998) (quoting *Wetz v. State*, 503 So.2d at 808; *Coleman v. State*, 697 So.2d 777, 787 (Miss.1997)). The Court may reverse only where the evidence is such that reasonable and fair-minded jurors could only find the defendant not guilty." *Heidel v. State*, 587 So.2d 835, 838 (Miss.1991).

¶28. A decision on a new trial motion rests in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable justice. This Court will reverse only for abuse of discretion. *McClain v. State*, 625 So.2d 774, 778-81 (Miss. 1993).

¶29. Stallworth argues that the jury verdict cannot be sustained due to the State's lack of physical evidence, the fact that he made no statement confessing to the murder, and that there was evidence of a second person having been in the apartment with the deceased sometime prior to her death.[(2)]

¶30. When viewed in a light most favorable to the State, the evidence was sufficient to support the jury's verdict. The jury heard evidence that Stallworth committed an act of domestic violence against Bridget Shields fifteen days prior to her death. A witness testified that while in jail, Stallworth threatened to kill his victim. The jury heard a "911" tape that led the Gulfport Police Department to begin searching for Stallworth. A reasonable inference is that Bridget identified Stallworth by name. On the night of the murder, Stallworth turned himself in the police. After being arrested, Stallworth told Carver where to search for the murder weapon.

¶31. Reviewing this evidence against Stallworth, should the Court allow the guilty verdict to stand, no unconscionable injustice would occur. The evidence and the inferences to be drawn therefrom were more than sufficient to permit a reasonable juror to find Stallworth guilty of the crime of murder. Further, in light of the evidence presented, the trial court did not abuse its discretion in denying Stallworth's motion for a new trial.

### CONCLUSION

¶32. For these reasons, the judgment of the trial court is affirmed.

¶33. **CONVICTION OF MURDER AND SENTENCE AS A HABITUAL OFFENDER TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT HOPE OF PAROLE OR PROBATION, AFFIRMED.**

    **BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**

1. The court reporter did not transcribe the contents of the recording, and a transcript of the conversation is not included elsewhere in the record.

2. At the crime scene, two cups were located on either side of the bed, and a condom wrapper was next to the bed. The record indicates that no fingerprinting evidence is available for these items. Defense counsel asserts that due to the State's introduction of Stallworth's arrest and incarceration prior to the murder, that Stallworth could not have been responsible for the items found in the apartment.