# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-02384-SCT

*BOBBY TAYLOR*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2004 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES L. PENLEY, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/22/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DIAZ AND CARLSON, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

### Statement of the Case

¶1.     Bobby Taylor was convicted of one count of aggravated assault under Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2006) for pouring a bottle of rubbing alcohol on his girlfriend and then setting her on fire. While both the defendant and the victim testified that the incident was purely accidental, the State provided other evidence that substantially contradicted their testimony. Taylor was found guilty and sentenced to fifteen years in the State's custody with the last five years suspended on post-release supervision.

¶2.    The defendant had been living in an apartment with his girlfriend, Doris Jackson, for two years.  They had been involved in an on-and-off romantic relationship for roughly nine years.  Though the couple testified that they had not experienced any problems in the past three years, the State introduced several domestic violence charges that Jackson filed against the defendant.  None of the charges were ever prosecuted and both the defendant and Jackson denied knowledge of the charges.  However, both Jackson and the defendant admitted that he had hit her in the past.  They also admitted that he had once shot her in the hand, though they both claimed it was an accident.

¶3.    On the night of July 16, 2003, Jackson went to the casino where she gambled and drank for four to five hours.  She came back to the apartment where the defendant was playing dominos with some of his friends.  After the defendant refused to give her more money for gambling, Jackson went to the neighbor's apartment to drink some more and watch a movie.  When she returned to her apartment, the visitors had left and she was alone with the defendant.  The events that followed are disputed.

¶4.    Both the defendant and Jackson gave similar testimony regarding the sequence of events.  Both testified that she was fully clothed and that the defendant had a bottle of rubbing alcohol and had put "a dab" of the liquid on her hand.  They both testified that he had put alcohol in his hand before and lit it, but that he was always "just playing."  When the defendant went to answer a knock at the door, he gave Jackson the bottle of alcohol to hold.  She testified that she accidentally spilt the contents of the bottle on her clothes and then walked out of the bedroom into the hallway.  At this point, the defendant was coming back down the hallway to meet her, and Jackson testified, "[the defendant] was just flicking a

2

lighter, and my arm caught afire. Then I just rubbed my shirt, and it caught everywhere else just by me rubbing my hand." The defendant then tried to use the bedspread to put out the fire, but Jackson had to get in the shower to finally extinguish the flames. He then helped her change clothes and called a friend to drive her to the hospital.

¶5.     Upon examination, the local hospital sent Jackson to the Greenwood Burn Center, where she remained for two weeks. She sustained first and second degree burns over the front of her body, covering large portions of her face, neck, chest, stomach, and inner thighs.

¶6.     The State offered two expert witnesses who testified that the burns were not a result of an accident. Both experts found that the burn patterns indicated that Jackson was lying on her back and that someone had poured the alcohol on her. One expert also testified that the fire started in the bedroom, not in the hallway as both the defendant and the victim alleged. The evidence indicated that while she was wearing a bra at the time, she could not have been wearing a shirt or pants as neither article of clothing was damaged. Additionally, the investigating police officers testified that the bed was still warm and partially damp. The sheets also were charred, but the defendant claimed that they had been burned six months earlier, and he could not offer an explanation for why the mattress was scorched.

## Issues

¶7.     The defendant raises four issues on appeal: (1) whether the court erred in allowing evidence of prior bad acts; (2) whether the court erred in certifying Leslie Decareaux as an expert and allowing her to testify; (3) whether the court erred in allowing evidence to be presented to the jury that the State did not produce in discovery; and (4) whether the verdict was against the sufficiency of the evidence.

3

**Discussion**

**(1) Whether the Court Erred in Allowing Evidence of Prior Bad Acts.**

¶8. The defendant argues that the court erred in allowing the State to admit evidence of prior acts of domestic violence. The standard of review governing the admissibility of evidence is whether the trial court abused its discretion. ***Peterson v. State***, 671 So. 2d 647, 655 (Miss.1996) (citing ***Baine v. State***, 606 So. 2d 1076, 1078 (Miss. 1992); ***Wade v. State***, 583 So. 2d 965, 967 (Miss. 1991)). This Court must first determine if the proper legal standards were applied. ***Id.*** at 655-56 (citing ***Baine***, 606 So. 2d at 1078). If the trial court incorrectly applied the rules of evidence, resulting in prejudice to the accused, then a reversal is warranted. ***Id.*** at 656 (citing ***Parker v. State***, 606 So. 2d 1132, 1137-1138 (Miss. 1992)).

¶9. Before trial, the defendant moved to exclude any evidence of prior acts of violence against the victim, arguing that they were remote in time and that all charges had been dismissed. The court ruled that the evidence could be admitted both as impeachment evidence and as evidence of motive under Rule 404(b). The court also found that any prejudicial effect was outweighed by the probative value of the evidence because the central issue of the case was whether the fire was an accident.

¶10. On the stand, Jackson denied that the defendant had ever hurt her before. When asked about four prior charges which she filed against the defendant, she either denied filing them or claimed that she could not remember. Jackson also testified that the entire incident at issue was an accident. As a result, the prosecutor was allowed to introduce four separate instances in which Jackson had filed domestic violence charges against the defendant, both

4

as impeachment evidence and as substantive evidence of motive. These charges were filed on January 1, 1997; April 15, 1998; May 5, 1998; and September 15, 2000.

¶11.   The defendant argues that evidence of these charges was improper character evidence that should not have been admitted. He cites **Levy v. State**, 724 So. 2d 405, 408 (Miss. Ct. App. 1998) for the proposition that "[e]vidence of a prior criminal activity on the part of one criminally accused is inadmissible where the prior offense has not resulted in a conviction." However, **Levy** goes on to explain that "the State has a 'legitimate interest in telling a rational and coherent story of what happened.' Where substantially necessary to present to the jury 'the complete story of the crime,' evidence or testimony may be given though it may reveal or suggest other crimes." **Id.** (citing **Brown v. State**, 483 So. 2d 328, 330 (Miss.1986)). **Brown** was written only a month after the Rules of Evidence came into effect, and Rule 404(b) clearly provides instances where evidence of other crimes may be admissible to present "the complete story":

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident.

M.R.E. 404(b).

¶12.   Here, the evidence was not admitted to prove that the defendant acted in conformity with his prior bad acts, but to rebut his allegation that the incident was an accident. Therefore, the trial judge properly admitted evidence of the prior domestic violence charges as evidence of motive and absence of accident. *See **Stallworth v. State***, 797 So. 2d 905 (Miss. 2001) (evidence of domestic violence charge relevant to show motive in murder case);

5

*Kolberg v. State*, 829 So. 2d 29 (Miss. 2002) (prior bruising on child's body relevant to show absence of accident).

¶13.    The defendant also argues that these incidents should not have been admitted at trial because they were highly prejudicial to the defendant.    Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."    M.R.E. 403.    Because the evidence was highly relevant to show motive and absence of accident, it cannot be said that the judge abused his discretion in admitting the prior charges.

¶14.    Finally, the defendant argues that the remoteness of the prior acts detracted from their relevance.    The previous domestic violence charges occurred from three to six years prior to the incident.    Again, it cannot be said that the judge abused his discretion in allowing evidence of the prior bad acts as it was highly relevant to prove motive and absence of accident.

**(2) Whether the Court Erred in Certifying Leslie Decareaux as an Expert and Allowing Her to Testify.**

¶15.    The defendant argues that the trial court erred in admitting the expert testimony of Leslie Decareaux.    Decareaux was a fire inspector who investigated the fire and testified regarding the burn patterns on Jackson's body.    As with other evidence, the standard of review for the admission or suppression of expert testimony is abuse of discretion. *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003).

6

Rule 702 governs the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

M.R.E. 702. In this case, the trial judge found that Decareaux met the rule's requirements. Before allowing her to testify, the trial court conducted a **Daubert** hearing and found that she was qualified to give expert testimony. The court found that because of her training and experience, Decareaux was able to apply reliable principles and methods to the facts of the case and offer her expert opinions on the burn pattern.

¶16. The defendant argues that Decareaux should not have been certified as an expert for several reasons. He argues that she has never been qualified as an expert, that her main areas of expertise are structure fires, that she had only worked on two or three death cases, that she was not certified by the International Association of Arson Investigation, and that she manipulated facts to fit her opinions. First, no prior expert qualification in a court of law is necessary under Rule 702. Second, her **Daubert** testimony revealed extensive training in fire and arson investigation, including a thirteen-year employment with the Vicksburg Fire Department and various certifications from nationally recognized fire investigation organizations, including certifications in the field of burn patterns. She further testified that she had investigated more than 100 fires and that she had been certified as an emergency medical technician since 1994. Finally, nothing in her testimony suggests that she manipulated the facts to fit her opinions. Though the defendant claims she stated as fact that

7

the comforter was on the bed, the transcript reveals otherwise: "As I testified to earlier, I can't be one hundred percent conclusive that it was on the bed."

¶17.     In light of the ***Daubert*** hearing and Ms. Decareaux's training and experience, the trial judge did not abuse his discretion in allowing her to give expert testimony on the burn patterns.

**(3) Whether the Court Erred in Allowing Evidence to be Presented to the Jury that the State Did Not Produce in Discovery.**

¶18.     The defendant argues that the trial court erred by allowing the State to introduce affidavits from prior charges filed by the victim because these documents had never been produced by the State. Initially, the trial court sustained the defendant's objection to the introduction of the affidavits. However, once Jackson denied filing any charges against the defendant, the trial court allowed the affidavits to be introduced as impeachment evidence.

¶19.     On review, this Court "may reverse a trial judge's ruling regarding discovery issues only if we find an abuse of discretion." ***Conley v. State***, 790 So. 2d 773, 782 (Miss. 2001) (citing ***Harkins v. Paschall***, 348 So. 2d 1019, 1022 (Miss. 1977)). M.R.E. 103 provides that "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." This comports with the purpose of Uniform Circuit and County Court Rule Rule 9.04, which is "to avoid ambush or unfair surprise to either party at trial." ***Le v. State***, 913 So. 2d 913, 938 (Miss. 2005) (citing ***Hunt v. State***, 687 So. 2d 1154, 1164 (Miss. 1996)).

Rule 9.04 (A) of the Uniform Circuit and County Court Rules states in part:

8

The prosecution must disclose to each defendant or to defendant's attorney, and permit the defendant or defendant's attorney to inspect, copy, test, and photograph upon written request and without the necessity of court order the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution:

. . . .

3. Copy of the criminal record of the defendant, if proposed to be used to impeach.

Accordingly, the State was required to provide a copy of the defendant's criminal record to defense counsel prior to trial.

¶20. U.C.C.C.R. 9.04(I) sets out the procedure trial courts must follow in case of discovery violations :

If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:

1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and

2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.

¶21. Under this rule, the trial court was required to give the defense a reasonable opportunity to examine the affidavits. However, because the defendant is unable to show prejudice or that a substantial right was affected, the issue is without merit. The defendant

9

argues that although he was aware that testimony of prior acts would be allowed, he was unaware of the affidavits and the potential of their introduction. The State countered that these affidavits were discussed at a prior hearing. Although the defendant was represented by different counsel at trial, trial counsel was provided a transcript from this hearing. The State argues that because he was provided with a transcript, defense counsel should have been aware of the affidavits' contents.

¶22. Neither the affidavits nor the prior hearing are included in the record. However, the defendant was fully aware that the prior domestic violence charges would be presented at trial as evidence of motive or absence of accident. Because trial counsel was aware of the previous charges, he could have easily discovered the contents of the affidavits. Additionally, it cannot be said from the record before us that the trial judge abused his discretion in allowing the affidavits to be presented as impeachment evidence.

**(4) Whether the Verdict was Contrary to the Sufficiency of the Evidence.**

¶23. When reviewing a case for sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The evidence must show "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet

this test it is insufficient to support a conviction." ***Id.*** (quoting ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968)).

¶24.    The defendant was convicted under Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2006), which reads "[a] person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."  The defendant argues that the evidence could not support his conviction because even though both experts agreed that a liquid was poured on the victim, they could not testify as to how the liquid ignited.  The defendant further argues that the ignition could have been accidental and that neither he nor the victim may "have been aware of all the circumstances surrounding the incident."

¶25.    It is clear from the record that there was sufficient evidence to support a conviction of aggravated assault.  Although both the defendant and the victim argued the fire was an accident, the State offered substantial evidence to contradict their testimony.  The defendant's version of the story is simply not supported by the physical evidence.  While the defendant and the victim testified that she was standing up in the hallway and fully clothed, the evidence indicates that she was in fact lying down on her back, in the bedroom, and not wearing her shirt or jeans.  Her extensive burns also support a finding that the act was intentional and further discredit the defendant's testimony that he only put a "dab" of alcohol on the victim.  Therefore, the State provided sufficient evidence to support the verdict, and this issue is without merit.

11

## Conclusion

¶26.    Because none of the issues merit reversal, the conviction and sentence of the Warren

County Circuit Court is affirmed.

¶27.    **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN (15)YEARS WITH TEN (10) YEARS TO SERVE, THE REMAINDER SUSPENDED, WITH FIVE (5) YEARS POST RELEASE SUPERVISION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.**