557 So.2d 1183 (1990)
Joseph Earl PATE, Jr.
v.
STATE of Mississippi.
No. 07-KA-59011.
Supreme Court of Mississippi.
March 7, 1990.
Hansel Anthony Jones, Jackson, for appellant.
Mike C. Moore, Atty. Gen. and Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
En banc.
PRATHER, Justice, for the Court:
This appeal addresses the sufficiency of proof of two issues: (1) identity of this defendant, as well as, (2) constructive possession of an illegal drug.
Joseph Earl Pate, the defendant below, was charged with possession of marijuana in an amount greater than one (1) ounce with the intent to distribute said substance. Following a jury trial, Pate was found guilty and was sentenced by the trial court to a term of seven (7) years with the Mississippi Department of Corrections, with four (4) years suspended, and was ordered to pay a $1,000.00 fine. He now appeals this conviction, citing as error the following:
(1) THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE DEFENDANT'S CONVICTION, AND THE TRIAL COURT THEREFORE ERRED IN OVERRULING THE DEFENDANT'S MOTIONS FOR A DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT.

I.
On Wednesday, January 14, 1986, Room 312 of the Regal 8 Motel in Jackson was cleaned for occupancy, using the routine methods. On January 15, 1986, at 9:40 p.m., Joseph Earl Pate, Jr. rented the room and stayed until 3:15 p.m. on Friday, January 16th. Since the maid had gone for the day, the room was not cleaned on that Friday.
On January 17, 1986, at approximately 3:00 p.m., Mildred Chaney, a maid at the Regal 8 Motel, while cleaning the room, found a bag on the floor underneath the *1184 bed in Room 312 of the motel. The bag contained cotton and some manila envelopes. Chaney took the bag to Ilene Van Gorder, one of the co-managers of the motel. No testimony was elicited as to whether the room was locked during this interval.
Van Gorder and Chaney then returned to the room, where they found a second bag containing 9.24 ounces of marijuana underneath the bed which was not found by the maid initially. Van Gorder secured the two bags inside her office and telephoned the police.
Chaney resumed her cleaning of Room 312, and while she was doing so, a black male entered the room and said he had returned to "get his stuff." The maid became nervous and left the room. She never saw the man again, and could not identify Pate as the man who appeared in the room while she cleaned. No one else identified Pate at trial as the man who appeared at the room to "get his stuff."
Further investigation of the bags and their contents led to Pate's arrest at 11:00 p.m. on Saturday, January 17th, as the last registered occupant of the room. He was indicted, tried and ultimately convicted. He now appeals his conviction to this Court.

II.

DID THE TRIAL COURT ERR BY OVERRULING THE DEFENDANT'S MOTIONS FOR A DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT?

A. Standard of Review
By making motions for a directed verdict and judgment notwithstanding the verdict, Pate is challenging the legal sufficiency of the evidence used to convict him. In assessing such claims, this Court uses a familiar standard of review:
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence  not just that supporting the case for the prosecution  in the light most consistent with the verdict. We give prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
McFee v. State, 511 So.2d 130, 133-34 (Miss. 1987). See also, Wells v. State, 521 So.2d 1274, 1277-78 (Miss. 1987).
Pate challenges the sufficiency of the evidence used to convict him on two (2) grounds: (1) failure by the prosecution to prove possession of the marijuana by Pate, and (2) failure to prove his intent to distribute. The first of these two grounds is valid  thereby necessitating reversal of his conviction.

B. Proof of Possession
In the case sub judice, Pate clearly did not have actual possession of the marijuana at the time of his arrest. However, this fact alone is not determinative of the outcome of the case.
There must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control.

Guilbeau v. State, 502 So.2d 639, 641 (Miss. 1987) (quoting Curry v. State, 249 So.2d 414, 416 [Miss. 1971]) (Emphasis added).
This Court, in Pool v. State, 483 So.2d 331 (Miss. 1986), further delineated the proof required when a conviction is based *1185 in part on elements of constructive possession.
"One who is the owner in possession of the premises .. . is presumed to be in constructive possession of the articles found in or on the property possessed." Id. at 432. This presumption is rebuttable, however, and does not relieve the State of its burden to prove guilt beyond a reasonable doubt. Id. Thus, "where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband." Powell v. State, 355 So.2d 1378, 1379 (Miss. 1978). See also, Keys v. State, 478 So.2d 266, 268 (Miss. 1985).
483 So.2d at 336 (quoting Hamburg v. State, 248 So.2d 430, 432 [Miss. 1971]). (Emphasis added).
The record in this case deserves quoting. Van Gorder on direct examination testified that she did not see the man who came looking for his "stuff."
A. Mrs. Chaney came back down. I had her go to another room to start cleaning and we locked that one up. And she came back down and she said, "The fellow is here to pick up his stuff." And she was scared. I said, "Well, just stay down in the office until we find out what's going on." And I walked out and I didn't see anybody at that particular time so we thought he had left. (Emphasis added).
Q. Uh huh.
A. But she stayed downstairs because she was afraid to go back out until the police arrived.
Q. Okay. Did anyone then come to you asking about her?
A. The head housekeeper then came and said there was a gentleman that wanted his stuff 
MR. JONES: Objection to hearsay, Your Honor.
A.  from 312.
Q. Okay.
THE COURT: All right. It's submitted for the fact that it was said and to explain her actions. Objection overruled.
Q. Now, could you tell the jury from the records who was logged into that room or who had that room at that particular time?
A. Yes, sir. Mr. Joseph Pate.
Q. Okay. And Mr. Pate, has he  has he stayed there on more than one occasion?
A. Oh, yes, quite frequently.
Q. Okay. And do you have knowledge of who he is and what he looks like, then?
A. Yes, I do.
Q. Okay. Can you look around the courtroom, then, and tell us whether or not the individual you know as Joseph Pate is in the courtroom?
A. That gentleman sitting there. And the day he came in he had a plastic hood on his head, but that's the gentleman there.
Q. Okay. When you say, "That's the gentleman," could you point him out.
A. The one in the army jacket there.
MR. HEDGEPETH: Let the record reflect she's identified the defendant.
THE COURT: The record may so reflect.
Q. So this is the individual that had that room at that particular time.
A. Yes, sir.
Q. All right. And this is the individual, then,  was this the individual who came looking for the maid? (Emphasis added).
A. Yes.
MR. JONES: Objection, Your Honor. She has already testified that she didn't see anybody.

THE COURT: That objection is sustained. The jury will disregard the answer. (Emphasis added).
Q. Okay. Do you know who came looking for the maid?
Transcript, at p. 52.
The next answer from Van Gorder is confusing. It is found at Transcript, p. 54, and is as follows:
A. He was standing on the second floor out in front of the window of my apartment, waiting for us to bring the *1186 package of his stuff, is the way it was worded. (Emphasis added).
Q. Okay. And who was that?
A. That was Mr. Pate.
Q. Okay. So that's the individual that came looking for her.
A. Right.
Q. Now  (document inspected by defense counsel). I hand you a piece of paper. Can you identify that and tell the Court what it is, please.
A. Yes. It's the original registration card a guest has to fill out on coming into renting a room, and this is a copy, the top copy of the folio where we do the billings for our machine.
Q. And what room in that particular instance was that?
A. 312.
Q. 312? Is that the same room where you found these items?
A. Yes, sir.
Q. And who registered in that room, please, ma'am? Tell the jury.
A. Mr. Joseph Pate.
Q. That's the same Joseph Pate that's the defendant in this case?
A. Yes, sir.
The italicized portion indicates that she is reading from some document. This appears to be in conflict with her prior statement that she never saw "the man" who came for his "stuff."
However, defense counsel's cross-examination of Van Gorder affirmatively shows that she never actually saw the appellant:
Q. Okay. I believe you testified that you did not observe Mrs. Chaney talking with anyone; is that correct?
A. That's correct.
Q. All right. Now, so you don't know who that person was.
A. Not the one that she talked to, no, sir.
(Transcript, 61 & 62).
On this uncertain testimony, this Court concludes that the facts in this case are insufficient to uphold Pate's conviction. It is undisputed that Pate was the registered occupant of Room 312 on Thursday, January 15th, 1987 and Friday, January 16th, 1987. He did not check out until 3:17 p.m. on the 16th, when he turned in his room key. Pate had no dominion or control over the room after 3:17 p.m. on Friday. Mildred Chaney, the maid who cleaned the room, did testify that a black man[1] appeared on Saturday about 3:00 p.m. at the room to get his "stuff." However, this general description fits thousands of men in the Jackson area alone.
Van Gorder positively identified Pate at trial as the man who was occupying the room on January 15 and 16. She testified that he had rented a room at the motel on many prior occasions, always on the back side of the building. Van Gorder also testified that once Pate checked out, the room was locked with a deadbolt, and that only she and her husband had a key. At what exact time the locking was done by deadbolting was not stated in the record. The room was not scheduled for cleaning until January 17th, the day the marijuana was found.
Testimony at trial also revealed that the room had been thoroughly cleaned on January 14th, prior to Pate's arrival. As part of the procedure followed in cleaning the rooms at the motel, all drawers were checked for items left behind by former occupants. A supervisor also followed behind the maids, to insure that the rooms had been cleaned properly. Van Gorder also testified that the room was unoccupied the night of January 14th, the day before Pate arrived.
Despite the foregoing testimony, the evidence in this case linking Pate to the marijuana was circumstantial in nature, and after reviewing the record carefully, this Court cannot say there is enough proof to allow us to say that a reasonable juror could find Pate guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. The only proof here is that Pate rented the room and that the contraband was found there the day after he had checked out. Any one of the motel staff could have put it there. Any guest of Pate's could have *1187 put it there. Finally, it may have been there before Pate rented the room, or it may have been hidden there afterwards. In any event, there is not enough evidence here to support Pate's conviction based upon constructive possession, nor his identification as the black man who came "for his stuff."

C. Intent to Distribute
Based on our holding under the first half of this assignment of error, there is no need to address the proof surrounding Pate's intent to distribute the marijuana. Logic dictates that if the evidence is insufficient to support a conviction for constructive possession of marijuana, the evidence is likewise insufficient to support a conviction for possession of marijuana with intent to distribute.
REVERSED AND APPELLANT DISCHARGED.
HAWKINS, DAN M. LEE, P.JJ., and ROBERTSON, PITTMAN and BLASS, JJ., concur.
ROY NOBLE LEE, C.J., and ANDERSON and SULLIVAN, JJ., dissent.
ANDERSON, Justice, dissenting:
I respectfully dissent from the majority opinion. The facts in this case are sufficient to withstand Pate's challenge concerning the proof of possession of a controlled substance. It is undisputed that Pate was the registered occupant of Room 312 on Thursday, January 15, 1987, and Friday, January 16, 1987. Pate did not check out of the room until 3:17 P.M. on Friday, January 16, when he turned in his room key. Although the maid who cleaned the room could not positively identify Pate in court, she testified that a man of Pate's race appeared at the room and told her that he had "come back to get [his] stuff."
Then the co-manager of the motel, Ilene Van Gorder, positively identified Pate at trial as the man who was occupying the room on January 15 and 16. Gorder testified further that she knew Pate because he had rented a room at the motel on many prior occasions, always requesting the back side of the building. When Pate checked out of the room at mid-afternoon, it was locked with a dead bolt, to which only Van Gorder and her husband had a key. Thus, no one entered the room after Pate checked out until the maid went to clean the room the next day.
Finally, and most importantly, Gorder testified that after she sent the maid to clean another room she waited in her office for the police. The maid reappeared in Gorder's office and told her that the same man had come again to "pick up his stuff". The maid was frightened, so she stayed in the office with Gorder. The head housekeeper then went into the office and told Gorder that "there was a gentleman that wanted his stuff." When the prosecutor asked Gorder if she knew who came looking for the maid and his stuff, she responded "[h]e was standing on the second floor out in front of the window of my apartment, waiting for us to bring the package of his stuff ..." Gorder then indicated, in court, that the man standing in front of her window was the defendant Pate.
Here, both the maid and Gorder's testimony was competent evidence connecting Pate with the contraband. See, Pool v. State, 483 So.2d 331, 336-337 (Miss. 1986). In light of the above facts, and keeping in mind the Court's standard of review for challenges to the legal sufficiency of evidence used to secure a conviction, I would affirm the judgment of the lower court.
ROY NOBLE LEE, C.J., and SULLIVAN, J., join this dissent.
NOTES
[1] Pate is black.