¶ 1. Christina Bell was tried and convicted in the Circuit Court of Leake County of possession of methamphetamine, more than two grams but less than ten grams. In this appeal, Bell challenges the weight and sufficiency of the evidence of possession. *Page 1287 
 FACTS
¶ 2. On December 29, 2000, Misheila Blackwell was detained for shoplifting denatured alcohol and pseudoephedrine pills from a Wal-Mart in Forest, Mississippi. These items are used in the home manufacture of methamphetamine. Blackwell agreed to assist police by carrying the items to their intended destination and wearing a transmitter. Several officers followed Blackwell, and she led them to the two-bedroom house of appellant, Christina Garcia Bell, her mother, Antonia Garcia, and Bell's four children. The police waited while Blackwell entered Bell's house. Via Blackwell's transmitter, the officers overheard a conversation between Blackwell and two other females about soaking pills to make methamphetamine. At that point, the officers decided to approach the house.
¶ 3. When the police arrived at the house, Blackwell, Garcia and Bell were standing on the porch. An officer informed them that they believed there were illegal items inside the house, and asked who paid the rent on the residence. Bell answered that she paid the rent, and she orally consented to allow the police to search the premises. The search yielded evidence of methamphetamine production, including cans of starter fluid found outside the residence, a bucket with residue found under the kitchen sink, an electric skillet, a gas mask, and lithium batteries in a plastic bag. Methamphetamine was found in Garcia's bedroom under the mattress, in a dresser drawer, and in a jewelry box. Bell and Garcia were indicted for possession of precursors to production of methamphetamine and possession of methamphetamine. Garcia pled guilty to both charges.
¶ 4. At Bell's trial, Garcia testified on behalf of her daughter. Garcia claimed ownership of all the methamphetamine, and said she was the only person allowed in her bedroom. She said that Bell knew nothing about the bucket under the sink. She testified that Blackwell owned all other incriminating items, except the gas mask, which she said Bell owned and used for varnishing cabinets. She claimed that Bell knew nothing of the methamphetamine production going on in the house due to Garcia's efforts to keep her in the dark, along with Bell's child care responsibilities. She testified that she routinely sent Bell on errands to keep her out of the house during production.
¶ 5. Garcia said that when Bell discovered Blackwell in the house, Bell told Blackwell, "I hear you're trouble. I want you and all of your stuff out of my house." Garcia testified that Garcia, Bell and Blackwell were the only adults in the house after Blackwell's arrival, and that no one had a conversation with Blackwell about making methamphetamine. She claimed that Blackwell and her brother-in-law Wayne were the only ones who ever "cooked" at the house.
¶ 6. Garcia was impeached by the waiver of rights statement she dictated to the sheriff after her arrest. The statement said, "Me and Chris would usually get pills and batteries for the cook." Garcia alleged this was a transcription error, that she did not read the waiver before signing it, and that she actually said that Chris would drive her to Wal-Mart where Garcia would get pills and batteries for the cook. Garcia said she was "scared" when she stated, "When they finished cooking, they gave Chris the filters they used and some finished product." In his testimony, the Sheriff stated that he read Garcia's statement back to her, and she declined to make changes.
¶ 7. Bell testified, denying any knowledge of methamphetamine or methamphetamine production in her house. She *Page 1288 
denied discussing production with Blackwell, and said she told Blackwell to get out and throw her stuff across the road. The listening officers testified that they never heard anyone tell Blackwell to get out or throw the supplies across the road.
¶ 8. After deliberation, the jury returned a verdict of guilty of possession of methamphetamine. The jury was unable to reach a verdict as to possession of precursors. Bell was sentenced to eight years for possession of methamphetamine.
 LAW AND ANALYSIS
¶ 9. Bell argues that she was entitled to a directed verdict because the evidence was legally insufficient, or that she was entitled to a new trial because the verdict was against the weight of the evidence. She rests both these arguments on the proposition that the State failed to prove the element of possession beyond a reasonable doubt. All the methamphetamine found was taken from Garcia's bedroom. Bell argues that since she did not have exclusive control of the bedroom, the State did not prove Bell constructively possessed the methamphetamine. Therefore, the argument goes, the case should never have been submitted to the jury, or, alternatively, the jury failed to properly weigh the evidence and Bell was entitled to a new trial.
¶ 10. The legal sufficiency of the evidence is challenged by a motion for a directed verdict or JNOV. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). In deciding whether the prosecution has presented sufficient evidence to sustain the verdict, the Court must consider as true all credible evidence consistent with the defendant's guilt and the State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. A reviewing court may only reverse where, with respect to one or more of the elements of the offense, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Id.
¶ 11. Bell argues that to show constructive possession, the State was required to prove Bell exercised exclusive dominion and control of the premises. Bell cites Powell v. State, 355 So.2d 1378 (Miss. 1978).Powell does state that, "where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal," but it continues, "absent some competent evidence connecting [the accused] with the contraband." Id. at 1379. Taking the State's evidence as true, the "additional incriminating facts" Powell
requires were present that connected Bell to the methamphetamine. Examples are Bell's proximity to the drugs, Garcia's statements that Bell was involved with the methamphetamine production and that Bell received the finished product, and testimony that it would be nearly impossible for a resident to miss the strong smell generated by cooking methamphetamine.
¶ 12. Bell also cites Pate v. State, 557 So.2d 1183, 1187 (Miss. 1990), in which the court reversed Pate's conviction of possession of marijuana. Id. At trial, the State attempted to prove constructive possession with evidence of marijuana discovered in a hotel room the day after Pate checked out. Id. at 1184. The room was unoccupied for one night after Pate's departure and before the marijuana was discovered, with several persons having access to the room during that time. Id. at 1186. The court found the State's evidence was insufficient to prove constructive possession. Id. at 1187. Pate is distinguishable from the case sub judice, because in this case there was other proof from which the jurors could reasonably infer that Bell exercised *Page 1289 
dominion and control of the methamphetamine. This issue is without merit.
¶ 13. The weight of the evidence is challenged by a motion for a new trial. McClain, 625 So.2d at 781. "A new trial motion only should be granted when the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Wetz v. State, 503 So.2d 803, 812 (Miss. 1987). This Court, on appeal, will reverse and order a new trial only upon a determination that the trial court abused its discretion, accepting as true all evidence favorable to the State. Id.
¶ 14. Bell argues the verdict was contrary to the overwhelming weight of the evidence because the methamphetamine was found in Garcia's bedroom. This argument is unpersuasive. The jury heard testimony that Bell was involved in production and received the finished product. It is the role of the jury to weigh conflicting evidence. Lewis v. State,580 So.2d 1279, 1288 (Miss. 1991). In the case sub judice, the jurors weighed the evidence presented, and reasonably concluded that Bell possessed the methamphetamine found in her house. We cannot say that the trial court abused its discretion by refusing to grant Bell's motion for a new trial.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OFCONVICTION OF POSSESSION OF METHAMPHETAMINE AND SENTENCE OF EIGHT YEARSIN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED.ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE,IRVING, MYERS AND BRANTLEY, JJ., CONCUR.
 *Page 1