923 So.2d 210 (2005)
Richard Earl KERNS, Jr. and Howard Thomas McKinney, Appellants
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00648-COA.
Court of Appeals of Mississippi.
April 5, 2005.
Rehearing Denied June 28, 2005.
*212 Clayton Lockhart, Travis T. Vance, Vicksburg, attorneys for appellants.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
EN BANC.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. On July 24, 2001, after securing a search warrant, officers of the Warren County Sheriff's Department searched and seized the home of Richard Kerns in Vicksburg, Mississippi. Kerns's home was a mobile home on stilts, with blue tarp hanging from the base of the home, surrounding a work area beneath the body of the mobile home.
¶ 2. Upon executing the search warrant, the deputies discovered 288 pseudoephedrine pills, ether, sulfuric acid, and hydrogen chloride gas, all of which are considered precursor chemicals to crystal methamphetamine. The officers also seized quantities of the completed product, along with filters, scales, and plastic bags. The officers further discovered tin foil packets that are used to smoke the methamphetamine, some of which tested positive for the presence of burned methamphetamine, indicating that some of the *213 drug had been consumed on the premises. Kerns and Howard McKinney were both arrested at the scene of the methamphetamine laboratory.
¶ 3. Kerns was convicted of manufacturing methamphetamine, possession of methamphetamine with intent to distribute, and possession of precursor chemicals with the intent to manufacture a controlled substance. Kerns's sentence under count three of the indictment was subject to enhancement under Mississippi Code Annotated Section 41-29-152 (Rev.2001) for the possession of a firearm. McKinney was convicted of manufacturing methamphetamine, possession of methamphetamine with the intent to distribute, and possession of precursor chemicals with the intent to manufacture a controlled substance. McKinney's sentence under count three was subject to enhancement under section 41-29-152 because McKinney was found to be in possession of a firearm. Kerns and McKinney were tried jointly, but have filed separate appeals. On appeal, Kerns raises the following two issues: (1) the trial court erred in denying his motion to suppress the evidence seized at his residence, and (2) the trial court erred in not suppressing items not mentioned on the original inventory on the return of the search warrant. On appeal, McKinney raises one issue, that the verdict is contrary to established principles of law and is against the overwhelming weight of the evidence.
¶ 4. Finding Kerns's arguments to lack merit, this Court affirms Kerns's conviction but reverses McKinney's conviction.

STANDARD OF REVIEW
¶ 5. The standard of review regarding a trial judge's ruling at a suppression hearing is whether substantial credible evidence was present to support the trial judge's finding when evaluating the totality of the circumstances. Price v. State, 752 So.2d 1070, 1073(¶ 9) (Miss.Ct. App.1999). As our supreme court succinctly stated in Petti v. State, 666 So.2d 754 (Miss.1995), when reviewing a magistrate's finding of probable cause, an appellate court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause. Petti, 666 So.2d at 758 (citing Smith v. State, 504 So.2d 1194, 1196 (Miss.1987)). Our standard of review regarding the admission of evidence in a criminal case is abuse of discretion. Harris v. State, 731 So.2d 1125, 1130(¶ 29) (Miss.1999).

DISCUSSION OF ISSUES

KERNS'S APPEAL

I. DID THE TRIAL COURT ERR IN DENYING KERNS'S MOTION TO SUPPRESS THE EVIDENCE SEIZED AT HIS RESIDENCE?
¶ 6. The Supreme Court has adopted a "totality of the circumstances" test in making a probable cause determination. An issuing magistrate is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238-9, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Supreme Court has also determined that "the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238, 103 S.Ct. 2317 (citing Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 *214 (1960)). In making our review, this Court looks to the facts and circumstances set forth in the affidavit for search warrant and the sworn oral testimony presented to the issuing magistrate. Williams v. State, 583 So.2d 620, 622 (Miss.1991).
¶ 7. Detectives Crevitt and Traxler presented written account of facts and circumstances to Judge Bradford to secure a warrant to search Kerns's mobile home. Each of the detectives wrote separate facts and circumstances in support of the warrant; however, the two accounts were submitted to Judge Bradford on the same piece of paper. Crevitt's account outlined the following information for the issuing judge: on June 22, 2001, the Warren County Sheriff's Department received a telephone call from a "reliable" confidential informant. This CI informed Crevitt that Kerns was attempting to modify a butane tank for the purpose of storing anhydrous ammonia, which is used in manufacturing methamphetamine. Crevitt's statement also outlined that during the month of May of that year the sheriff's department received a call that Richard Kerns and several other people were involved in distributing methamphetamine and that Kerns was creating the substance at his residence.
¶ 8. Detective Traxler's written account provided Judge Bradford with the following information: he received information that methamphetamine was being produced at Kerns's residence. An informant told Traxler that Kerns was producing the substance in a lab located underneath the mobile home and concealed in a tarp. Traxler's account related that his information was received from a reliable source who had been used in the past for a number of arrests.
¶ 9. No record was kept when Traxler and Crevitt presented their information to Judge Bradford; however, Detectives Traxler and Crevitt, as well as Judge Bradford were called to testify at the hearing on the motion to suppress. Crevitt testified that when he presented the information to Judge Bradford, Judge Bradford asked Crevitt if everything contained in the document was correct and true, and if Crevitt would swear to the effects in the document. To this Crevitt responded, "I do." At the hearing on the motion to suppress, Traxler did not recall if Judge Bradford asked him questions regarding the truthfulness of the information he provided. At the hearing on the motion to suppress, Judge Bradford testified that he did not recall asking the detectives detailed questions about the facts and circumstances in support of the warrant. Judge Bradford did testify that it is his procedure to review the information supplied by the presenting officers. Judge Bradford testified that, after reviewing the information, he would have asked the presenting officers if they knew for a fact that the drugs were being distributed by Kerns and if the presenting officers had specific information regarding Kerns's alleged production of the methamphetamine.
¶ 10. Judge Bradford did not err in making his determination that contraband or evidence would be discovered at Kerns's mobile home. The CI who tipped off Crevitt was well-known to Crevitt, and Crevitt had used the CI with success on a number of occasions prior to the Kerns warrant. Furthermore, the information presented to the magistrate included details such as the location of the methamphetamine lab and the fact that the lab was hidden beneath tarp draped from the undercarriage of the mobile home. Considering the evidence presented to Judge Bradford, not in isolation, but under the totality of the circumstances, we find that probable cause for the warrant at Kerns's *215 mobile home did exist. This issue is without merit.

II. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE ITEMS NOT MENTIONED ON THE ORIGINAL INVENTORY INCLUDED IN THE SEARCH WARRANT'S RETURN?
¶ 11. The standard of review for admission of evidence in a criminal case is abuse of discretion. Harris, 731 So.2d at 1130(¶ 29). The case of Brown v. State, 534 So.2d 1019, 1023-24 (Miss.1988), recounts the present Mississippi law regarding the return and inventory of search warrants. The return and inventory of a search warrant subsequent to its execution is a ministerial act. Wince v. State, 206 Miss. 189, 198, 39 So.2d 882, 884 (1949). Citing Wince, the Brown court determined that because a return is ministerial in nature, the failure to make a proper return does not invalidate a properly issued search warrant. Brown, 534 So.2d at 1023-24. Affirming Wince, the court further determined that such a search warrant does not become void because of an improper return "or error therein, but it may be amended to conform to the facts." Id. (citing Wince, 39 So.2d at 884). Accordingly, we find that the failure to timely file a return for a search warrant did not invalidate the valid search warrant. The trial court did not abuse its discretion in admitting the evidence contained on the addendum to the return. This assignment of error lacks merit.

MCKINNEY'S APPEAL

I. IS THE VERDICT CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 12. On appeal McKinney argues only that the verdict is contrary to the law and against the weight of the evidence; however, McKinney's arguments are more properly characterized as attacking the legal sufficiency of the evidence. In reviewing whether a jury verdict is against the overwhelming weight of the evidence, this Court must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Crawford v. State 754 So.2d 1211, 1222(¶ 30) (Miss. 2000) (citing Collier v. State, 711 So.2d 458, 461(¶ 12) (Miss.1998)). A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction "unconscionable injustice." Crawford, 754 So.2d at 1222 (quoting Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983)). On appeal, McKinney argues that the evidence produced by the State was lacking because no one testified that they personally observed McKinney manufacturing a controlled substance on the date in question. Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. Edwards v. State, 469 So.2d 68, 70 (Miss. 1985).
¶ 13. There was no evidence presented that McKinney was found to be in actual possession of methamphetamine. Neither the finished product nor any of the precursor chemicals were found on his person or in his actual possession. The State, however, may convict McKinney for possession on a theory of constructive possession. The supreme court discussed the concept of "constructive *216 possession" in Curry v. State, 249 So.2d 414 (Miss.1971). In Curry, the supreme court determined that to support a possession conviction based upon constructive possession "there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." Id. at 416. Constructive possession may be shown by establishing that the drug involved was subject to the defendant's dominion or control. Id. The supreme court further stated that "[p]roximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances." Id. Thus, showing that McKinney was discovered within two feet of an active methamphetamine laboratory is not sufficient to prove that McKinney was in constructive possession of the precursor chemicals, constructive possession of a controlled substance with the intent to distribute, and unlawfully manufacturing a controlled substance. The State must show additional incriminating circumstances.
¶ 14. Such additional information may come in the form of accomplice testimony (Bell v. State, 830 So.2d 1285, 1288(¶ 11) (Miss.Ct.App.2002)); statements made by the defendant to the police (see, e.g., Ginn v. State, 860 So.2d 675 (Miss. 2003)); receipts linking the defendant to the purchase of the precursor chemicals (Walker v. State, 881 So.2d 820, 831(¶ 33) (Miss.2004)) and other evidence. This list is by no means intended to be exhaustive; however, under case law it is clear that mere presence in an area in which drugs are discovered is not sufficient to convict on a theory of constructive possession. Martin v. State, 804 So.2d 967, 970(¶ 12) (Miss.2001).
¶ 15. McKinney was indicted for possession of precursor chemicals pursuant to Mississippi Code Annotated Section 41-29-313(1)(a)(i).[1] This section provides, in pertinent part, that it is unlawful for a person to "[p]urchase, possess, transfer or distribute any two (2) or more of the listed precursor chemicals or drugs in any amount with the intent to unlawfully manufacture a controlled substance. . . ." Thus, the State must show that McKinney either actually or constructively possessed two or more of the enumerated chemicals on the date in question.
¶ 16. McKinney was also indicted under Mississippi Code Annotated Section 41-29-139(a) for possession of a controlled substance with intent to distribute and manufacture a controlled substance with intent to distribute. For a conviction of constructive possession under this section, the State must show that McKinney constructively possessed a controlled substance with the intent to distribute it, or it may prove that he manufactured a controlled substance with the intent to distribute.
¶ 17. Jamie Pennington testified that she and McKinney purchased anhydrous ammonia and delivered the substance to Kerns's trailer. There was also testimony that the area beneath Kerns's trailer smelled of ether. We are not convinced that these two pieces of information provide sufficient incriminating circumstances to uphold a conviction of constructive possession. At most, Pennington's testimony evidences that McKinney exercised control over one enumerated chemical, not two chemicals as required by section 41-29-313(1)(a)(i). No testimony or evidence was *217 produced support that McKinney exercised control over other precursor chemicals present at Kerns's trailer. There was no testimony that McKinney participated in manufacturing the methamphetamine, other than testimony that he was present at the lab. Furthermore, there was no testimony that McKinney exercised any dominion or control over the methamphetamine that was retrieved from the trailer. As this Court is obligated to follow the present law regarding constructive possession, we must reverse and render McKinney's conviction.
¶ 18. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF RICHARD KERNS OF COUNT I, MANUFACTURE OF METHAMPHETAMINE AND SENTENCE OF THIRTY YEARS; $5,000 FINE SUSPENDED; COUNT II, POSSESSION OF METHAMPHETAMINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY YEARS, TEN YEARS TO SERVE, TEN YEARS SUSPENDED AND FIVE YEARS' POST-RELEASE SUPERVISION TO RUN CONSECUTIVELY WITH SENTENCE IN COUNT I; COUNT III, POSSESSION OF PRECURSOR CHEMICALS WITH INTENT TO MANUFACTURE METHAMPHETAMINE AND ENHANCED SENTENCE OF THIRTY YEARS, TO RUN CONCURRENTLY WITH SENTENCE IN COUNT I; ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
¶ 19. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF HOWARD MCKINNEY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
KING, C.J., IRVING, CHANDLER AND ISHEE, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH A SEPARATE WRITTEN OPINION JOINED BY BRIDGES, P.J., MYERS AND BARNES, JJ.
GRIFFIS, J., Concurring in Part and Dissenting in Part:
¶ 20. With respect for the majority, I concur with the majority's decision as to Richard Earl Kerns, Jr., and I dissent from the majority's decision to reverse and render Howard Thomas McKinney's convictions.
¶ 21. Although there was no evidence presented that McKinney was found to be in actual possession of methamphetamine, the state may convict McKinney for possession on a theory of constructive possession. In Curry v. State, 249 So.2d 414, 416 (Miss.1971), the supreme court determined that to support a possession conviction based upon constructive possession "there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it."
¶ 22. Randy Lewis with the Warren County Sheriff's Office, who was accepted as an expert on manufacturing methamphetamine, testified that a working lab for manufacturing methamphetamine was present at Kerns' trailer. The lab was set up on a table underneath Kerns' trailer, which was on stilts. McKinney was found within two feet of the table where the methamphetamine was being manufactured. There was a strong smell of ether around McKinney, as well as the presence of numerous precursor chemicals used to manufacture methamphetamine.
*218 ¶ 23. Jamie Pennington, a friend of McKinney's, testified that she knew McKinney was involved with methamphetamine. She testified that she had overheard a conversation between Kerns and McKinney about purchasing some anhydrous ammonia, a precursor chemical needed for the final stages of manufacturing methamphetamine. Two days prior to McKinney's arrest, Pennington took McKinney to obtain anhydrous ammonia. She also stated that upon arriving at Kerns' trailer on the day of the arrest, she saw McKinney with Kerns downstairs where the meth lab was set up.
¶ 24. Constructive possession may be shown by establishing that the drug involved was subject to the defendant's dominion or control. Id. Control over the substance was evidenced by the fact that McKinney was found within two feet of the meth lab with a handgun and had ammunition for the handgun nearby. Surrounding him were numerous precursor chemicals and he smelled of ether. Furthermore, a witness testified that she heard McKinney make arrangements to buy the ingredients of meth.
¶ 25. Based on this evidence, I am of the opinion that there was sufficient evidence to support McKinney's convictions. I would affirm McKinney's convictions.
BRIDGES, P.J., MYERS AND BARNES JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] Mississippi Code Annotated Section 41-29-313 was amended effective July 1, 2002; therefore, citations to Mississippi Code Annotated Section 41-29-313 refer to the law in effect at the time of McKinney's indictment.