# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-00648-SCT

*RICHARD EARL KERNS, JR. AND HOWARD
THOMAS McKINNEY*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/2002 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | CLAYTON LOCKHART |
| | TRAVIS T. VANCE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS AS TO HOWARD THOMAS McKINNEY IS REVERSED, AND THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED - 12/08/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Upon executing a search warrant on July 24, 2001, officers from the Warren County Sheriff's Department found numerous precursor chemicals to crystal methamphetamine, along with the completed product, filters, scales, and plastic bags, under the stilt-structured mobile

home of Richard Earl Kerns, Jr. Kerns and Howard Thomas McKinney were present when the officers conducted the search and were placed under arrest at that time. At trial, McKinney's motion for a directed verdict was overruled and he was subsequently found guilty of manufacture of a controlled substance (Count I), possession of a controlled substance with intent to distribute (Count II), and possession of precursor chemicals with intent to manufacture a controlled substance (Count III).[1] Following the jury verdict, McKinney was sentenced to serve 30 years for Count I, 20 years for Count II, and 30 years for Count III.[2] His sentence under Count III was subject to enhancement for possession of a firearm under Miss. Code Ann. § 41-29-152.[3] Kerns was also convicted. After motions for JNOV or a new trial

---

[1]As to Counts I and II, Miss. Code Ann. § 41-29-139(a)(1) applies:
(a)Except as authorized by this article, it is unlawful for any person
knowingly or intentionally:
(1)To sell, barter, transfer, *manufacture*, distribute, dispense or *possess with
intent to* sell, barter, transfer, manufacture, *distribute*, or dispense, a
controlled substance . . . . (emphasis added).
As to Count III, § 41-29-313(1)(a)(i) (Rev. 2001) applies:
(1)(a)Except as authorized in this section, it is unlawful for any person to
knowingly or intentionally:
(i)Purchase, possess, transfer or distribute any *two (2) or more* of the listed
precursor chemicals or drugs in any amount with the intent to unlawfully
manufacture a controlled substance . . . . (emphasis added).

[2]The time served for Count I was to be consecutive with 10 years suspended, while the time served for Counts II and III was to be concurrent.

[3]§ 41-29-152(1) states, in part that:
(1)Any person who violates Section 41-29-313 or who violates Section 41-29-139 with reference to a controlled substance listed in Schedule I, II, III, IV or V as set out in Sections 41-29-113 through 41-29-121 . . . and has in his possession any firearm, either at the time of the commission of the offense or at the time any arrest is made, may be punished by a fine up to twice that authorized by Section 41-29-139 or 41-29-313, or by a term of imprisonment or confinement up to twice that authorized by Section 41-29-139 or 41-29-313 or both.

were denied by the trial court, they appealed and this Court assigned the appeal to the Mississippi Court of Appeals.

¶2. The Court of Appeals affirmed Kerns's convictions but reversed and rendered McKinney's convictions finding that:

> [a]t most, Pennington's testimony evidences that McKinney exercised control over one enumerated chemical, not two chemicals as required by section 41-29-313(1)(a)(I). No testimony or evidence . . . produced support that McKinney exercised control over other precursor chemicals present at Kerns's trailer. There was no testimony that McKinney participated in manufacturing the methamphetamine, other than testimony that he was present at the lab. Furthermore, there was no testimony that McKinney exercised any dominion or control over the methamphetamine that was retrieved from the trailer.

*Kerns v. State,* – So. 2d –, 2005 WL 757591 at *5 (Miss. Ct. App. 2005). The concurring-in-part and dissenting-in-part opinion of Judge Griffis, joined by Presiding Judge Bridges and Judges Myers and Barnes, dissented from reversing and rendering McKinney's conviction, finding:

> [c]onstructive possession may be shown by establishing that the drug involved was subject to the defendant's dominion or control. . . . Control over the substance was evidenced by the fact that McKinney was found within two feet of the meth lab with a handgun and had ammunition for the handgun nearby. Surrounding him were numerous precursor chemicals and he smelled of ether. Furthermore, a witness testified that she heard McKinney make arrangements to buy the ingredients of meth. Based on this evidence, I am of the opinion that there was sufficient evidence to support McKinney's convictions.

*Id.* at *6.

¶3. On April 19, 2005, the State of Mississippi filed a motion for rehearing. That motion was denied by the Mississippi Court of Appeals on June 28, 2005. Thereafter, the State of Mississippi filed a petition for writ of certiorari with this Court, seeking review of one issue: was the decision of the Court of Appeals in conflict with its own decisions and with the criteria

for establishing constructive possession as stated by the Mississippi Supreme Court? The petition was granted by Order of this Court on September 8, 2005.

**FACTS**

¶4.     Randy Lewis of the Warren County Sheriff's Office testified that a working laboratory for manufacturing methamphetamine was present under Kern's stilt-structured mobile home. Tara Milam of the Mississippi Crime Laboratory corroborated Lewis's testimony, concluding that the laboratory was in the final stages of producing consumable methamphetamine when the arrests were made. At the time of arrest, McKinney was identified by Officer Jeff Crevitt as being within two feet of methamphetamine in liquid form ("methamphetamine oil"). All that remained necessary for crystal methamphetamine to be formed was exposure of the methamphetamine oil to hydrogen chloride gas. Hydrogen chloride gas can be formed using the combination of Coke bottles with hoses inserted, rock salt, and sulfuric acid; all of which were present at the scene.

¶5.     Lewis testified that the "Nazi method" for producing methamphetamine was being used in the laboratory. This method allows for the transformation of cold pills, pseudoephedrine, into crystal methamphetamine. This process requires numerous chemical reactions, with a filtering of the resulting products, such that the substance(s) an individual would see at any stage during the manufacturing process would depend upon the stage of the process.

¶6.     According to Milam, the precursor chemicals openly present near McKinney at the time of his arrest included ether, sulfuric acid, and either ephedrine or pseudoephedrine. McKinney offered no explanation for why he was within close proximity to the precursor chemicals. According to Officer Crevitt, the lab smelled strongly of ether. There were six, forty-eight

4

(48) count boxes of cold pills, the starting product under the "Nazi method," in the room. Moreover, tin foil and coffee filters in the room tested positive for burned methamphetamine,[4] and scales and bags in the room provided further evidence for the jury to consider that the methamphetamine was being manufactured for distribution.

¶7.     Jamie Pennington, the girlfriend of Richard Kerns, testified that McKinney was involved with manufacturing methamphetamine, as she had watched him "cook" methamphetamine in the past.   She also testified that McKinney had been at Kerns's trailer *on a continuing basis* for months and that she had heard him discussing the acquisition of anhydrous ammonia[5] with Kerns.   Moreover, Pennington testified that she took McKinney to get anhydrous ammonia "around the first of April," and had taken him to purchase more just two days prior to the search and his arrest.

¶8.     When arrested, a Lorcin .38 handgun halfway out of its holster, was found underneath McKinney, and within his reach was a box of matching ammunition.   This Court has recognized weapons like handguns as "tools of the drug trade."   ***Hemphill v. State,*** 566 So. 2d 207, 209 (Miss. 1990).   These facts undergirded the imposition of § 41-29-152(1).

## ANALYSIS

¶9.     The standard of review binding an appellate court in overturning a jury verdict is strictly limited.   In making that determination, the Court should weigh "the evidence in the light most

---

[4]Tin foil and straws are used in the smoking or inhaling of methamphetamine. Coffee filters are used to render the finished product by removing impurities.

[5]Anhydrous ammonia is a precursor chemical used in the final stages of manufacturing methamphetamine from pseudoephedrine and is listed as a "precursor drug or chemical" under Miss. Code Ann. § 41-29-313(1)(b)(ii).

5

favorable to the prosecution." ***Dilworth v. State,*** 909 So. 2d 731, 736 (Miss. 2005). However, if the facts and evidence considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on *any* element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," ***Edwards v. State,*** 469 So. 2d 68, 70 (Miss. 1985), the appellate court should reverse and render the jury verdict.

¶10.    McKinney argued to the Court of Appeals that the State failed to present any witnesses who affirmatively observed McKinney manufacturing crystal methamphetamine on July 24, 2001, at Kerns's residence or actually recovered any drugs, precursor chemicals, or other contraband from McKinney's person at that time. As such, the State was required to establish "constructive possession" by McKinney to sustain his conviction. McKinney argued, and the Court of Appeals agreed, that the State had failed to meet that "constructive possession" burden.[6]

¶11.    This Court has established that:

> [w]hat constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of 'possession' is a question which is not susceptible to a specific rule. However, there must be sufficient facts to warrant a finding that defendant was *aware of the presence and character of the particular substance and was intentionally and consciously in possession of it*. It need not be actual physical possession. *Constructive possession* may be shown by establishing that the drug involved was subject to his *dominion or control*. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

---

[6]For instance, McKinney's brief asserted that "the jury verdict of guilty for possession of precursor chemicals cannot stand as there was never any evidence that McKinney possessed more than one precursor chemical on July 22, 2001, and not the requisite two or more that is required by [§ 41-29-313(1)(a)(I)]."

*Curry v. State,* 249 So. 2d 414, 416 (Miss. 1971) (emphasis added). *See also **Keys v. State,*** 478 So. 2d 266, 268 (Miss. 1985) ("[a]n item is within one's constructive possession when it is subject to his dominion or control."). "[W]hen contraband is found on premises which are *not* owned by a defendant, mere physical proximity to the contraband does not, in itself, show constructive possession." *Cunningham v. State,* 583 So. 2d 960, 962 (Miss. 1991) (emphasis added). In that situation, "the state must show additional incriminating circumstances to justify a finding of constructive possession." *Fultz v. State,* 573 So. 2d 689, 690 (Miss. 1990). *See also **Powell v. State,*** 355 So. 2d 1378, 1379 (Miss. 1978) ("Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband."). Essentially, "when contraband is found on premises, there must be evidence, in addition to physical proximity, showing the defendant consciously exercised control over the contraband, and, absent this evidence, a finding of constructive possession cannot be sustained." *Cunningham,* 583 So. 2d at 962.

¶12. In *Bell v. State*, the Court of Appeals found the jury had reasonably concluded that Bell constructively possessed the methamphetamine found in her house because of:

> Bell's proximity to the drugs, Garcia's statements that Bell was involved with the methamphetamine production and that Bell received the finished product, and testimony that it would be nearly impossible for a resident to miss the strong smell generated by cooking methamphetamine.

830 So. 2d 1285, 1288 (Miss. Ct. App. 2002). Similarly, in *Blissett v. State*, this Court found that an arresting officer's testimony that the car Blissett was driving had a "strong, overpowering odor of unburned marijuana" aided in establishing constructive possession

7

through "circumstantial evidence showing Blissett knew or should have known of the marijuana's presence in the trunk of the vehicle." 754 So. 2d 1242, 1244 (Miss. 2000).

¶13.    By contrast, in *Jones v. State,* 693 So. 2d 375 (Miss. 1997), an automobile with Jones and Jawara inside was stopped and searched. The search yielded a jacket containing a bag of marijuana, a briefcase with a revolver inside, a scale, and approximately twelve pounds of marijuana in the trunk. *See id.* at 375-76. However, Jones's conviction for possession of more than one kilogram of marijuana was reversed and rendered by this Court's finding that:

> [i]n this case there is nothing to connect Jones to this marijuana except for his presence in the car. Jones was not the one spotted by Lillian Johnson in the Amoco station as allegedly having marijuana; Jones was not connected with the jacket in the backseat of the car containing marijuana; Jones did not own or drive the car in question; Jones did not testify at trial; Jawara either denied or did not know of any connection between Jones and the marijuana in the car. The evidence was insufficient to show Jones's constructive possession of the marijuana . . . .

*Id.* at 377. Similarly, in *Ferrell v. State*, this Court reversed and rendered Ferrell's conviction for possession of crack cocaine (found in a matchbox between the front seats of the vehicle driven by Ferrell) because:

> [a]s the operator of the car, Ferrell had dominion and control over the contraband discovered in the car. However, he was not the owner of the car; therefore, the State was required to establish *additional incriminating circumstances* in order to prove constructive possession. The State claims that the location of the matchbox next to the driver's seat and the 15 hours which Ferrell had possession of the car amounted to additional incriminating circumstances. These contentions are incorrect. Just as in *Fultz*, *the contraband was not positioned in such a way that its presence would be reasonably apparent to a person riding in the car*. The mere fact that the matchbox was only a matter of inches from where the defendant was sitting, rather than in the trunk, does not overcome the fact that the crack was cloaked. . . . Furthermore, Ferrell's possession of the car for a mere 15 hours does not qualify as an incriminating circumstance.

8

649 So. 2d 831, 835 (Miss. 1995) (emphasis added). This Court has also held that the mere presence of "'drug paraphernalia' such as ziplock bags and a pager found at the scene" are not "probative as to the issue of constructive possession." *Martin v. State,* 804 So. 2d 967, 970 (Miss. 2001).

¶14. Here, the methamphetamine was found on premises not owned by McKinney. As such, additional incriminating circumstances connecting McKinney with the methamphetamine and/or the precursor chemicals are required to establish constructive possession. Obviously the jury was satisfied, as this Court is, that such additional incriminating circumstances existed to find constructive possession. Since the Court should weigh "the evidence in the light most favorable to the prosecution," *Dilworth,* 909 So. 2d at 736, the Court of Appeals decision should be overturned unless "reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." *Edwards,* 469 So. 2d at 70. An evaluation of the evidence presented establishes the reasonableness of the jury verdict.

¶15. This case is clearly distinguishable from *Jones*, *Ferrell*, and *Martin*. Here, a plethora of additional incriminating facts and circumstances supports McKinney's awareness of the "presence and character" of the precursor chemicals and methamphetamine, as well as his intentional and conscious possession of them. *Curry,* 249 So. 2d at 416. Not only was McKinney present at an operating methamphetamine laboratory which smelled strongly of ether; he was within two feet of methamphetamine oil, surrounded by the necessary precursor chemicals for both creating methamphetamine oil and converting it into crystal methamphetamine, in possession of a Lorcin .38 handgun and within reach of ammunition, and in close proximity to tin foil and coffee filters which tested positive for methamphetamine.

9

Furthermore, according to the uncontradicted testimony of Jamie Pennington, McKinney was continually at the premises which housed the methamphetamine laboratory, had purchased anhydrous ammonia as late as two days before his arrest, and was involved in the manufacture of crystal methamphetamine. This evidence soars above and beyond mere presence, and conclusively establishes constructive possession.

**CONCLUSION**

¶16. Here, there was more than sufficient evidence from which jurors could reasonably conclude that McKinney was in constructive possession of both the precursor chemicals and the finished product at the lab. Therefore, the Court of Appeals erred in reversing and rendering the trial court's judgment as to McKinney. We affirm the trial court's judgment in its entirety.

¶17. **AS TO HOWARD THOMAS McKINNEY: THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. COUNT I: CONVICTION OF MANUFACTURE OF METHAMPHETAMINE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. PAYMENT OF A FINE OF $5,000 IS SUSPENDED. COUNT II: CONVICTION OF POSSESSION OF METHAMPHETAMINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY (20) YEARS, TEN (10) YEARS TO SERVE, TEN (10) YEARS SUSPENDED FOR FIVE (5) YEARS POST RELEASE SUPERVISION WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH SENTENCE IN COUNT I. COUNT III: CONVICTION OF POSSESSION OF PRECURSOR CHEMICALS WITH INTENT TO MANUFACTURE METHAMPHETAMINE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNT I.**

**AS TO RICHARD EARL KERNS, JR.: COUNT I: CONVICTION OF MANUFACTURE OF METHAMPHETAMINE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. PAYMENT OF A FINE OF $5,000 IS SUSPENDED. COUNT II: CONVICTION OF POSSESSION OF METHAMPHETAMINE WITH INTENT TO DISTRIBUTE AND**

**SENTENCE OF TWENTY (20) YEARS, TEN (10) YEARS TO SERVE, TEN (10) YEARS SUSPENDED FOR FIVE (5) YEARS POST RELEASE SUPERVISION WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH SENTENCE IN COUNT I. COUNT III: CONVICTION OF POSSESSION OF PRECURSOR CHEMICALS WITH INTENT TO MANUFACTURE METHAMPHETAMINE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNT I.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**