905 So.2d 754 (2004)
Undraneckic Desmond BRASSFIELD a/k/a Undraneckio Desmond Brassfield, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01550-COA.
Court of Appeals of Mississippi.
November 30, 2004.
*755 Edmund J. Phillips, Newton, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before BRIDGES, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. Defendant Undraneckio Desmond Brassfield was found guilty of carjacking, four counts of kidnapping, and armed robbery. Brassfield does not contest the validity of these guilty verdicts but raises two issues on appeal:
I. WHETHER THE COURT ERRED IN OVERRULING BRASSFIELD'S OBJECTION TO THE JURY RECEIVING AN AIDING AND ABETTING INSTRUCTION
II. WHETHER THE TRIAL COURT JUDGE ABUSED HIS DISCRETION IN OVERRULING THE DEFENDANT'S OBJECTION TO PROSECUTION'S QUESTIONING OF A WITNESS
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Emily Harrison was vacuuming her SUV, when defendant Undraneckio Brassfield accosted Emily from behind with a gun and told her and her three children to get in the vehicle. Someone else also got in the front seat with Brassfield. With Brassfield, his accomplice, and the four victims in the car, they drove down a country road. Brassfield and his accomplice stopped the SUV and told Emily and the children to kneel in a ditch. Afterwards, Brassfield and his accomplice went to a convenience store, where they held up the store, fired shots, and stole money. On this evidence, and much more, the jury found Brassfield guilty of all the charges for which he had been indicted. The charges included one count of carjacking, four counts of kidnapping, and one count of armed robbery.

ANALYSIS
I. WHETHER THE COURT ERRED IN OVERRULING BRASSFIELD'S OBJECTION TO THE JURY RECEIVING AN AIDING AND ABETTING INSTRUCTION
¶ 4. Brassfield argues that this Court should grant a new trial because the *756 trial court erred in giving the jury an aiding and abetting instruction. Over Brassfield's objection, the court gave jury instruction S-4 for the State, which reads as follows:
The Court instructs the jury that the guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accompanied by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise. If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
Of course, mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.
¶ 5. The Mississippi Supreme Court first addressed the appropriateness of giving an aiding and abetting instruction in Hornburger v. State, 650 So.2d 510, 514-15 (Miss.1995). In Hornburger, the aiding and abetting instruction erroneously allowed a jury to find the accused guilty as a principal if found doing "any act which is an element of the crime." Id. at 514. The Hornburger court found this jury instruction erroneous because it could allow the jury to convict the defendant even if only one element of the crime charged was proven. However, the court found the erroneous jury instruction to be harmless error because the other jury instructions provided that the State had to prove every element of the crime beyond a reasonable doubt. Id. at 515.
¶ 6. In Berry v. State, 728 So.2d 568 (Miss.1999), the Mississippi Supreme Court held that the aiding and abetting instruction in question rose to the level of reversible error. The jury's instruction in Berry reads as follows:
The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime, or immediately connected with it, or leading to its commission, is a principal.
One who aids, assists and encourages a transfer of cocaine is a principal and not an accessory, and his guilt in no wise depends upon the guilt or innocence, the conviction or acquittal of any other alleged participant in the crime. Therefore if you believe from the evidence, beyond a reasonable doubt, that Merlinda Berry did willfully, unlawfully and feloniously do any act which is an element of the crime of transfer of cocaine, *757 as defined by the Court's instructions, or immediately connected with it, or leading to its commission, then and in that event, you should find Merlinda Berry guilty of transfer of cocaine as charged in the indictment.
Id. at 570(¶ 4).
¶ 7. The Berry court held that the aiding and abetting instruction was clear error because the other jury instructions informed the jury of the all elements of the crime for which Berry was charged and the State's burden of proof. In addition, the aiding and abetting instruction appeared to give the jury an additional option of finding the defendant guilty if she committed only one element of the crime without finding that the crime was ever completed. Id. at 571(¶ 9). Unlike Hornburger, the court found that the aiding and abetting instruction was reversible error. Reversible error was present because, despite reading all of the instructions together, the jury could be misled into believing that the aiding and abetting instruction gave the jury another option of finding the defendant guilty in addition to the choice of finding that Berry committed all of the elements of the crime herself. Such a jury instruction is confusing and misleading and requires reversal. Id. (citing Brazile v. State, 514 So.2d 325, 326 (Miss.1987)).
¶ 8. The Mississippi Supreme Court followed the logic it enunciated in Berry when it reversed an aiding and abetting jury instruction in Lester v. State, 744 So.2d 757, 760(¶ 9) (Miss.1999). "[I]t [the aiding and abetting instruction] gives the jury an option to convict Lester based solely upon his doing any act which is an element of the crime without relating that act to liability for the commission of the crime itself by requiring the jury find him to have been present and consenting to and encouraging that crime."
¶ 9. This Court and the Mississippi Supreme Court have since distinguished the line of cases under Hornburger, Berry and Lester. The cases that have examined the impact of Hornburger have held that the aiding and abetting instructions were erroneous because they gave the jury the option of convicting the defendant without first finding that the crime was completed. Absent this deficiency, an aiding and abetting instruction does not constitute reversible error. Simmons v. State, 805 So.2d 452, 475(¶ 36) (Miss.2000); Mangum v. State, 762 So.2d 337, 344(¶ 20) (Miss.2000); Edwards v. State, 737 So.2d 275, 305(¶ 86) (Miss.1999); Armstrong v. State, 771 So.2d 988, 1001(¶ 52) (Miss.Ct.App.2000); Bland v. State, 771 So.2d 961, 965(¶ 10) (Miss. App.2000); Holmes v. State, 758 So.2d 1056, 1058(¶ 8) (Miss.App.2000). We find the line of cases distinguishing Hornburger to be applicable here. In this case, there was nothing in Brassfield's aiding and abetting instructions stating or implying that he could be convicted without the crimes of carjacking, kidnapping and armed robbery having been completed. The jury instructions for carjacking, kidnapping, and armed robbery clearly informed the jury of the elements of those respective crimes and the State's burden of proof. The offensive language in Hornburger is absent in this case, and there was no risk that the jury was confused about the elements of the crime necessary to convict Brassfield.
¶ 10. In 2001, the Mississippi Supreme Court recognized the problematic and recurring problem of insuring that trial courts give proper aiding and abetting jury instructions. To avoid any further confusion, Mississippi has now adopted the Fifth Circuit's Pattern Jury Instruction on Aiding and Abetting. Milano v. State, 790 So.2d 179, 185(¶ 21) (Miss.2001). These instructions read as follows:

*758 The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.
Id. (quoting Fifth Cir. Pattern Jury Instructions (Criminal) 2.06 (Aiding and Abetting) (Agency) (1998)). In this case, the jury received instructions which were nearly verbatim to the Fifth Circuit's Pattern Jury Instructions on aiding and abetting.
¶ 11. Alternatively, Brassfield argues that the aiding and abetting instruction is error because he was never indicted for aiding and abetting. We disagree. In Hollins v. State, 799 So.2d 118, 123(¶ 14) (Miss.Ct.App.2001), this Court held that an aiding and abetting instruction was proper where the evidence showed the defendant, Hollins, was present and assisted others in the commission of the drug sale. Even though aiding and abetting was not officially part of Hollins's indictment, this Court found no error in granting an aiding and abetting instruction because the evidence presented clearly supported such an instruction. Id. The facts of this case also justify a granting of an aiding and abetting instruction. In this case, the victims were instructed not to look at Brassfield or his accomplice. Therefore, there was doubt as to whether Brassfield actually completed the crimes himself, and the aiding and abetting charge served to remind the jury that they could render a guilty verdict regardless of who completed the actual crimes. Brassfield's argument is without merit.
II. WHETHER THE TRIAL COURT JUDGE ABUSED HIS DISCRETION IN OVERRULING THE DEFENDANT'S OBJECTION TO THE PROSECUTION'S QUESTIONING OF A WITNESS
¶ 12. Brassfield alleges that the trial court abused its discretion in refusing to instruct the prosecutor to cease a certain line of questioning. During the direct examination of prosecution witness Tamela Strickland, Brassfield's girlfriend at the time of the robbery, the following testimony occurred:

*759 Q. (BY MR. DUNCAN, THE PROSECUTOR): Back last year I assumed you learned that Mr. Brassfield here was charged in the robbery and kidnapping that occurred here in Sebastopol on November the 27th; right?
A. (BY MS. STRICKLAND): Yes, sir
Q. Do you recall getting those phone calls from him?
A. He must not have called my cell phone, but I couldn't never really get no connection. It kept cutting off. Every time I called, I got cut off. I couldn't ever get through.
Q. Do you remember getting calls about that time of day on your cell phone
A. Yes, sir
Q. Weren't they from Mr. Brassfield here?
A. Say what?
Q. Weren't they from Mr. Brassfield?
A. Actually, I just really couldn't get no tone. When he did, the phone just kept cutting out. I kept saying, "Who is this?" It was just like a lot of static and stuff on the phone.
Q. Now, me and you talked about this this morning, didn't we?
A. Yes, sir.
Q. Didn't you tell me that it was Mr. Brassfield that called?
A. No, I didn't. I just said I received some calls, and you was saying like it was from Brassfield. I don't know actually who it was, but it was a call coming through my phone.
Q. You didn't tell me it was Mr. Brassfield calling?
A. No, sir, because I really don't know who it was. I never could get no real connection.
Q. You didn't tell me anything about the bad connection; did you?
A. No, I did not, not as I recall.
Q. You told me Mr. Brassfield called you?
BY MR. ROLAND, THE DEFENSE ATTORNEY: Object, Your Honor. It has been asked and answered.
BY THE COURT: Overruled.
Q: (Duncan) This morning you told me Mr. Brassfield called you?
A: I thought you asked me was it Mr. Brassfield. I had got a call.
¶ 13. To summarize, the prosecution was questioning his witness, who turned out to be hostile, about some of her previous statements because he was now trying to impeach her. Defense counsel objected, the court overruled the objection, the prosecution asked two more questions and moved on. Whatever error the court made in overruling the objection is not reversible error. "When error involves the admission or exclusion of evidence, we, sitting as an appellate court, will not reverse unless the error adversely affects a substantial right of a party." Stallworth v. State, 797 So.2d 905, 908(¶ 8) (Miss.2001) (citing In Re Estate of Mask, 703 So.2d 852, 859(¶ 34) (Miss.1997); Terrain Enters., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995)). The court's overruling of the objection did not affect any of Brassfield's substantial rights. Brassfield was not subjected to the allegedly harassing questioning.
¶ 14. In alleging the prosecution's faulty examination of the witness, Brassfield alleges violations of Mississippi Rule of Evidence (MRE) 611(a), which protects witnesses from harassment, MRE 611(c), which prohibits leading questions, and MRE 403, which classifies such questioning as irrelevant. We find no error. The prosecution's questioning was not harassing because it was not repetitive, no abusive language was used, and it was over *760 in a matter of seconds. A trial court's decision to allow leading questions is one that rests within the discretion of the trial court, which will only be reversed upon a showing of abuse of discretion. McFarland v. State, 707 So.2d 166, 175 (Miss.1997) (citing Jones v. State, 606 So.2d 1051, 1059 (Miss.1992)); Ballenger v. State, 667 So.2d 1242, 1258 (Miss.1995) (citations omitted). When a witness becomes a hostile witness, a trial court clearly does not abuse his discretion in allowing leading questions. Hughes v. State, 735 So.2d 238, 279 (¶ 192) (Miss.1999). Contrary to Brassfield's characterization of the facts, the prosecution's line of questioning was certainly relevant for the purpose of impeaching the witness. Brassfield's argument is without merit.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF CONVICTION OF COUNT VI: ARMED ROBBERY  SENTENCE OF 30 YEARS; COUNT II: KIDNAPING  SENTENCE OF 30 YEARS TO RUN CONSECUTIVELY TO SENTENCE IN COUNT VI; COUNT III: KIDNAPING  SENTENCE OF 30 YEARS TO RUN CONSECUTIVELY TO SENTENCES IN COUNTS VI AND II; COUNT IV: KIDNAPING  SENTENCE OF 30 YEARS TO RUN CONCURRENTLY WITH SENTENCES IN COUNTS VI, II, AND III; COUNT V: KIDNAPING  SENTENCE OF 30 YEARS TO RUN CONCURRENTLY WITH SENTENCES IN COUNTS VI, II, III, AND IV; COUNT I: CARJACKING  SENTENCE OF 10 YEARS TO RUN CONSECUTIVELY TO SENTENCES IN COUNTS VI, II, III, IV, AND V, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.