GRIFFIS, J.,
for the Court.
¶ 1. Dale Terry appeals his conviction of possession of chemicals with the intent to manufacture a controlled substance. He was sentenced to serve twenty years. Terry raises four issues: (1) whether the trial court erred in denying the motion to suppress the samples taken from the drinking cup and the tested results of those samples from the Mississippi Crime Lab, (2) whether there was sufficient evidence to prove the element of possession beyond a reasonable doubt, (3) whether the trial court erred in refusing to give a jury instruction regarding circumstantial evidence, and (4) whether the verdict of the jury was against the overwhelming weight of the evidence, specifically in regards to the chain of custody of the samples from the drinking cup. We find no error and affirm.
FACTS
¶ 2. Shortly before 11:00 p.m. on April 14, 2003, Sergeant Evan Smith, a Washington County deputy, received an anonymous phone call advising him that Dale Terry was manufacturing methamphetamine at 55 Penny Lane in Washington County. Sergeant Smith contacted Deputy Dwight Donham and told him to meet at 55 Penny Lane. Upon arrival in separate patrol cars, the deputies proceeded to the back of the house, past a toolbox that emitted a strong smell of ether. Upon knocking on the door, Paulette Terry, Dale Terry’s mother, answered the door and invited the two deputies into the house. The deputies informed Ms. Terry of the anonymous tip and she gave the deputies oral consent to search the premises. A short time later, Agent Rick McDaniel of the Central Delta Drug Task Force, at the request of Sergeant Smith, arrived at 55 Penny Lane and received written consent from Ms. Terry to search the premises.
¶ 3. Upon receiving written consent to search, the officers went outside of the house and directly to the toolbox that was emitting the strong smell of ether. Upon finding the toolbox locked, Agent McDaniel asked who owned the toolbox. Dale Terry said that it was his. Terry stated that he did not have a key to open the toolbox, but could get into it. Terry offered to assist the officers in prying open the toolbox with a screwdriver and hammer. Upon almost turning over the toolbox, Terry was stopped by Agent McDaniel because the agent did not wish for the box and its contents to be destroyed. Agent McDaniel then proceeded to open the lid with a crowbar. Inside, Agent McDaniel found a thirty two ounce drinking cup, a box of salt, and some tubing. Some of the liquid in the cup was packaged and transported to the Central Delta Drug Task Force office by Agent McDaniel where Agent Jimmy Branning took some samples of the substance. Agent Bran-ning later transferred those samples to the State Crime Lab for testing and gave the samples to Jason Harbison, the evidence custodian for the State Crime Lab.
¶ 4. Adrian Hall, a forensic scientist with the Mississippi Crime Lab, testified that after testing the substance it was found to contain ethanol and ephedrine, two precursors used in the manufacture of methamphetamine.
¶ 5. At trial, Ms. Terry testified that, prior to the arrival of the deputies, Nick Southerland had come by the house to drop off some tools for Terry. She directed him to place the tools in the toolbox outside. She also testified the salt and tubing were purchased from Wal-Mart that night for the kids to start a fish tank and that these items were not in the toolbox, but found in the floorboard of Terry’s truck. Terry did not testify at trial.
*914 ANALYSIS

I. Whether the trial court erred in denying the motion to suppress the samples taken from the drinking cup and the tested results of those samples from the Mississippi Crime Lab.

¶ 6. Terry alleges that the trial court erred in denying his motion to suppress the samples taken from the drinking cup because of a break in the chain of custody. The burden is on the defendant to show whether there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence. Hemphill v. State, 566 So.2d 207, 208 (Miss.1990). In determining this issue, the decision is left to the discretion of the trial court. “[Ujnless the judicial discretion has been so abused as to be prejudicial to the Defendant, this Court will not reverse the ruling of the trial court.” Wright v. State, 236 So.2d 408, 409 (Miss.1970).
¶ 7. Here, the only hint of an indication that Terry can point to of tampering with or substitution of the evidence is the discrepancy between the chain of custody form and the testimony of Agent McDaniel and Agent Branning. The chain of custody form did not list Agent Branning, and both Agents Branning and McDaniel testified that Branning delivered the samples from the drinking cup to the Mississippi Crime Lab. Agent McDaniel testified that the discrepancy resulted from a blank being filled in incorrectly. Their testimony was sufficient to show, in place of the form, a complete chain of custody. Agent McDaniel stated he retrieved the cup from the toolbox and took it to Agent Branning who then took the samples. Agent Bran-ning then delivered the samples to the State Crime Lab on February 28, 2003.
¶ 8. We find that Terry has failed to carry the burden of showing any indication of tampering as required in Hemphill. Hemphill, 566 So.2d at 208. The trial court had more than adequate grounds upon which to base the denial of the motion to suppress the evidence. Therefore, the trial court did not abuse its discretion in denying Terry’s motion for suppression of the samples taken from the drinking cup, and its ruling will not be reversed.

II. Whether there was sufficient evidence to prove the element of possession beyond a reasonable doubt.

¶ 9. Next, Terry argues that the State failed to provide sufficient evidence to prove the element of possession. To evaluate whether the evidence given is sufficient, this Court must determine if any evidence may “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.” Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss. 1984)) (emphasis added). If the court finds that reasonable jurors could not have differed then the State has failed to prove the specific element, here possession. On the other hand, if reasonable jurors could have reached different conclusions with respect to every element of the offense, the evidence will be considered sufficient. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citing Edwards, 469 So.2d at 70).
¶ 10. Since Terry did not have the precursors actually on his person, the State must prove possession by constructive means. Recently, in Kerns v. State, 923 So.2d 196, 200(¶11) (Miss.2005), the supreme court considered what evidence was sufficient to support a finding of constructive possession. To establish possession, “there must be sufficient facts to *915 warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.” Id. (quoting Curry v. State, 249 So.2d 414, 416 (Miss.1971)). In addition, for constructive possession, “the drug involved must be subject to his dominion or control.” Id. In Kerns, the supreme court upheld a finding of sufficient evidence for a constructive possession case involving possession of precursors with intent to manufacture. Id. McKinney, the defendant in Kerns, did not own the property where he and the precursors were found, and the supreme court looked to see if there were any additional incriminating facts. Id. at 201 (¶¶ 14-15). It found that being:
present at an operating methamphetamine laboratory which smelled strongly of ether; he was within two feet of methamphetamine oil, surrounded by the necessary precursor chemicals for both creating methamphetamine oil and converting it into crystal methamphetamine; in possession of a Lorcin .38 handgun within reach of ammunition; and in close proximity to tin foil and coffee filters which tested positive for methamphetamine.
Id. at (¶ 15). Together, these facts were sufficient to find that McKinney was in constructive possession of the precursors. Id.
¶ 11. Similar to the analysis in Kerns, this Court looks to determine if there are incriminating facts to provide sufficient evidence of constructive possession. The precursors were found combined in a drinking cup which was located in a locked toolbox outside. The combination of these precursors produced a very strong odor that the officers, while walking up to the house, were able to smell as they passed by. As in Kerns, the strong odor arising from the use of precursors to manufacture methamphetamine was an incriminating fact suggesting that Terry was aware of the presence and character of the particular substance. Also, the officers arrived at the Terry’s residence only after they received an anonymous tip that Dale Terry was cooking crystal methamphetamine at 55 Penny Lane.
¶ 12. An important distinction between Kerns and the present case is that Terry actually owned the property where the precursors were found. The toolbox was locked, showing even more dominion and control of the property inside the toolbox. After learning that Terry was the owner of the toolbox, the officers asked for him to open it. Agent McDaniel testified that when Terry attempted to pry open the toolbox, it appeared as if he was trying to destroy the box and the contents within by slamming the toolbox down. Thus, the jury could have determined, from the testimony of Agent McDaniel and Sergeant Smith, that Terry knew exactly what was inside the toolbox and was trying to destroy any evidence that could possibly be used against him.
¶ 13. Therefore, we conclude that the evidence presented indicates that reasonable minds could differ as to whether Terry was in constructive possession of the precursors. With that being the case, this Court finds that the evidence presented was sufficient to establish Terry in constructive possession of the precursors. This is issue is without merit.

III. Whether the trial court erred in refusing to give a jury instruction regarding circumstantial evidence.

¶ 14. Terry contends that the trial court erred in refusing to issue a circumstantial evidence jury instruction. “A circumstantial evidence instruction must be given unless there is some type of *916 direct evidence such as eyewitness testimony, dying declaration, or confession or admission of the accused.” Deal v. State, 589 So.2d 1257, 1260 (Miss.1991) (citing Mack v. State, 481 So.2d 793, 795 (Miss.1985)). The supreme court has held that failure to grant such an instruction where one is required to be reversible error. Ginn v. State, 860 So.2d 675, 679(¶6) (Miss.2003) (citing Simpson v. State, 553 So.2d 37, 39 (Miss.1989)). Where the evidence is mixed and consists of both direct and circumstantial evidence, a circumstantial evidence instruction is not required. Sullivan v. State, 749 So.2d 983, 992(¶ 20) (Miss.1999).
¶ 15. The question this Court faces is whether there was any direct evidence offered of possession with intent to manufacture. The remaining possession element has been addressed above in regards to sufficiency, but we now must examine it with regards to direct evidence. This Court has held that a circumstantial evidence jury instruction was properly denied in a constructive possession case when marijuana was found in the defendant’s house, not on his person. Jenkins v. State, 757 So.2d 1005, 1009(¶20) (Miss.Ct.App. 1999). In addition, no error was found when a circumstantial jury instruction was denied in a similar constructive possession case involving marijuana found in a vehicle the defendant did not even own. Boches v. State, 506 So.2d 254, 260 (Miss.1987). In both of these proceedings, the testimony of the officers who discovered the drugs was considered direct evidence.
¶ 16. While there is no confession, dying declaration, or admission in this case, the trial court is not without eyewitness testimony. Here, the State presented the eyewitness testimony from Agent McDaniel, Sergeant Smith, and Officer Donham. They testified that a drinking cup containing a substance, later found to contain precursors, was found in Terry’s locked toolbox along with tubing and salt. All of the items found add up to support a showing of possession of precursors with intent to manufacture methamphetamine.
¶ 17. This Court has found direct evidence of the possession element, leaving only intent to be discussed. We follow the authority in Williams v. State, 445 So.2d 798, 808 (Miss.1984), where the court found that if intent alone is sought to be proven by circumstantial evidence, no circumstantial evidence instruction is necessary. Since direct evidence is not required for intent, the prong of intent to manufacture does not require a circumstantial jury instruction.
¶ 18. Due to the direct evidence of the testimony of Agent McDaniel, Sergeant Smith, and Officer Donham, that the precursors were found in Terry’s toolbox, the trial court did not err in denying Terry’s request to issue a circumstantial evidence instruction. This issue is without merit.

IV. Whether the verdict of the jury was against the overwhelming weight of the evidence, specifically in regards to the chain of custody of the samples from the drinking cup.

¶ 19. Terry’s final assignment of error is that the verdict of the jury was against the overwhelming weight of the evidence and a new trial should be granted. This Court will “only disturb a jury verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844(¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). To determine if this has occurred, the Court will look at the evidence in a light most favorable to the verdict. Id.
¶ 20. Viewing the evidence in the light most favorable to the verdict, this Court *917 cannot say that the verdict constitutes an unconscionable injustice. Here the precursors, tubing, and salt, were all found in the locked toolbox, which Terry stated he owned. The precursors were found combined in a drinking cup, not separate. In fact, evidence was put on at trial that the precursors were already in the beginning stages of producing the required chemicals to begin the manufacture of methamphetamine. Additional evidence was put on that tubing and salt, akin to that found near the drinking cup, are commonly used in the manufacture of methamphetamine. Testimony was given that it appeared Terry was possibly trying to destroy the contents of the toolbox, while prying the lid off. Viewed in the light most favorable to the verdict, we cannot say that the verdict of the jury was against the overwhelming weight of the evidence. Therefore, we find that the trial court-did not abuse its discretion in denying the motion for a new trial, and this assignment of error is without merit.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF POSSESSION OF CHEMICALS WITH THE INTENT TO MANUFACTURE A CONTROLLED SUBSTANCE AND SENTENCED TO SERVE A TERM OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ„ CONCUR. IRVING, J., CONCURS IN RESULT ONLY.