ROBERTS, J.,
for the Court.
¶ 1. On October 11, 2005, Donnie Richard Cook was convicted of willfully, unlawfully and feloniously having in his possession two or more precursor chemicals with the intent to manufacture methamphetamine, a controlled substance, in violation of Mississippi Code Annotated Section 41-29 — 313(l)(a)(I) (Rev.2005). Cook was subsequently sentenced as a habitual offender to a term of thirty years in the custody of the Mississippi Department of Corrections, without the benefit of parole, suspension or reduction of sentence. Cook now appeals and raises the following issues,
I. WHETHER THE TRIAL COURT ERRED IN PERMITTING THE STATE’S EXPERT TO TESTIFY THAT EPHEDRINE AND PSEU-DOEPHEDRINE ARE USED TO MANUFACTURE METHAMPHETAMINE.
II. WHETHER THE VERDICT WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
III. WHETHER THE COURT ERRED IN OVERRULING THE DEFENDANT’S OBJECTION TO LEADING.
IV. WHETHER THE COURT ERRED IN SUSTAINING THE STATE’S OBJECTION DURING COOK’S CROSS-EXAMINATION OF DEPUTY REN-FROE.
Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On the night of December 15, 2004, Deputies Chris Renfroe, Randy Johnson and Marcus Lingle with the Scott County Sheriffs Office prepared to serve an arrest warrant on Jared Cook, the Defendant’s son, at the home of Bernie Cook, Jared Cook’s grandmother. Lingle and Johnson waited at the front of the house while Renfroe went around to the back of Bernie Cook’s home in an attempt to close off Jared Cook’s escape route in the event he tried to evade capture. Once positioned in the backyard, Renfroe testified he noticed smoke coming from an open window of the *274 house. Approaching the window to investigate, he was initially taken aback by the smell emanating from the window, which he later identified as a typical smell surrounding a methamphetamine lab. After recovering, Renfroe looked through the window and saw Jared Cook, Shelia Matthews and Cook in the room. Renfroe testified that he saw all three individuals leave the room, but added that before Cook ran out he “picked up what [Renfroe] perceived to be a meth lab.” Renfroe described the “meth lab” in further detail, explaining that “it was a plastic container with a tube run[ning] out of it into a glass jar.”
¶ 3. After seeing the three individuals leave the room, Renfroe circled back around to the front of the house where he discovered that Jared Cook had already been arrested. Renfroe informed the other deputies of what he witnessed resulting in the arrest of Matthews and Cook. Following the trio’s arrest, the deputies searched the house. They found a coffee filter in the smoke filled room with an unknown substance on it that would later be identified by the State’s expert, Keith McMahon, as ephedrine pseudoephedrine, as well as other coffee filters with traces of methamphetamine and ephedrine pseu-doephedrine. The deputies then discovered the “meth lab” in the living room. McMahon testified that the plastic bottle contained traces of ephedrine pseu-doephedrine and that liquid from the glass jar was composed of ethyl ether, ethynes and hexanes.
¶4. Matthews, Jared Cook and Cook were indicted on August 1, 2005, for violation of section 41 — 29—313(l)(a)(i), and Matthews and Jared Cook would subsequently plead guilty. Cook’s trial was held on October 11, 2005. He was found to be guilty as charged, and was sentenced on October 13, 2005 as a habitual offender, in accordance with Mississippi Code Annotated Section 99-19-81 (Rev.2000), to a term of thirty years in the custody of the Mississippi Department of Corrections, without the benefit of parole, suspension or reduction of sentence. Following the lower court’s denial of Cook’s motion for a new trial, he perfected his appeal to this Court.
ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN PERMITTING THE STATE’S EXPERT TO TESTIFY THAT EPHEDRINE AND PSEU-DOEPHEDRINE ARE USED TO MANUFACTURE METHAMPHETAMINE.
¶ 5. Rule 702 of the Mississippi Rules of Evidence states, “If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise.” M.R.E. 702. Decisions of the trial court to admit or deny expert testimony are reviewed under the clearly erroneous standard. Winters v. State, 773 So.2d 973(¶ 5) (Miss.Ct.App.2000).
¶ 6. Cook argues that the trial court erred in allowing the State’s expert witness, McMahon, to testify as to what ephedrine and pseudoephedrine were used for in the realm of drug manufacturing. Specifically, Cook’s trial counsel, Jason Mangum, made objections during the following colloquies,
Q. Now can you tell us in the drug manufacturing area what is ephedrine and pseudoephedrine used for?
*275 BY MR. MANGUM: Your Honor, I believe that he hasn’t been qualified as an expert in this area.
BY THE COURT: Well a person can be an expert in more than one area and I think the witness is qualified to give expert opinion regarding the question that’s been asked of him. Overruled.
[[Image here]]
Q. Can you tell us what the substance in there is and how much of it is there?
A. It was ephedrine pseudoephedrine in the amount of 0.14 grams.
Q. And that substance is used by — that part of the substance is used to manufacture what clandestine operation?
A. To make amphetamine.
BY MR. MANGUM: Your Honor, same objection.
BY THE COURT: Overruled.
¶ 7. In support of his argument, Cook cites Sample v. State, 643 So.2d 524 (Miss.1994) and Walker v. State, 740 So.2d 873 (Miss.1999). However, in both Sample and Walker the testimony of the witnesses in issue was so specialized as to bring it under the category of expert opinion but in neither case were the witnesses qualified as experts. Sample, 643 So.2d at 530; Walker, 740 So.2d at (¶ 34). In contrast, McMahon was offered and accepted, without objection, as an expert in drug analysis and identification. During the voir dire of McMahon, he listed his various qualifications, experience and education pertaining to drug analysis and identification. One such qualification was the successful completion of a training program offered by the Mississippi Crime Laboratory. McMahon stated that the “training included specific reading assignments, one-on-one discussions and the supervising of drugs. Topics covered included instrumentation operation and usage and the physical and chemical properties of various controlled substances.” McMahon’s testimony concerning the knowledge gained through this training.is exactly what was objected to at trial and what is being appealed in the case sub judice. In light of McMahon’s direct testimony on his training of the “chemical properties of various controlled substances,” it was not clearly erroneous for the trial court to allow an expert in the fields of drug analysis and identification to testify as to the chemical make up of methamphetamine. This issue is without merit.
II. WHETHER THE VERDICT WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 8. “When reviewing a challenge to the weight of the evidence, this Court must determine whether the trial judge abused his discretion in denying a new trial.” Taylor v. State, 672 So.2d 1246, 1256 (Miss.1996). In order for this Court to reverse a trial court’s denial of a motion for new trial, “the verdict must be ‘so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’ ” Dilworth v. State, 909 So.2d 731(¶ 21) (Miss.2005)(quoting Bush v. State, 895 So.2d 836(¶ 18) (Miss.2005)). Additionally, “the evidence should be weighed in the fight most favorable to the verdict.” Dil-worth, 909 So.2d at (¶ 21).
¶ 9. Cook was convicted of possession of precursor chemicals with the intent to manufacture methamphetamine in violation of Mississippi Code Annotated section 41 — 29—313(l)(a)(i) (Rev.2005) which makes it unlawful to “purchase, possess, transfer, manufacture, attempt to manufacture or distribute any two (2) or more of the fisted precursor chemicals or drugs in any *276 amount with the intent to unlawfully manufacture a controlled substance.” Miss. Code Ann. § 41 — 29—313(l)(a)(i). Ether, ephedrine, pseudoephedrine and hexanes are listed as precursor drugs or chemicals. Miss.Code Ann. § 41 — 29—313(l)(b)(i), (v), (iv) and (xxii).
¶ 10. Cook argues that the facts presented at trial did not show that he was in constructive possession of the precursor chemicals in question and cites Kerns v. State, 923 So.2d 210 (Miss.Ct.App.2005), rev’d, 923 So.2d 196 (Miss.2005). In Kerns, Kerns and Howard McKinney were arrested at the scene of a methamphetamine lab in Kerns’s house. Id. at (¶ 2). McKinney was eventually convicted of, among other crimes, possession of precursor chemicals with the intent to manufacture a controlled substance. Id. at (¶ 3). On the sole issue of whether his conviction was against the overwhelming weight of the evidence, this Court reversed the judgment of the Circuit Court of Warren County. Id. at (¶ 4). In so doing, we reasoned that the record only supported a finding that McKinney had constructive possession of only one precursor chemical, rather than the two required by section 41-29-313(l)(a)(i). Not mentioned by Cook during his argument is that in response to the Kerns decision, the State filed a petition for writ of certiorari which was subsequently granted by the supreme court. Kerns v. State, 923 So.2d 196(¶ 3) (Miss.2005). In reversing this Court and affirming the judgment of the Circuit Court of Warren County, the supreme court stated there was a “plethora” of evidence that supported a finding that McKinney was in constructive possession of many precursor chemicals and other essentials needed for the production of methamphetamine. Id. at (¶ 15).
¶ 11. In order to show that Cook was in constructive possession of the precursor chemicals the State does not have to show actual physical possession. Id. at (¶ 11). However, there must be sufficient facts to support a finding that the defendant “was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.” Id. (quoting Curry v. State, 249 So.2d 414, 416 (Miss.1971)). Additionally, while a showing of physical proximity between the substance in question and the defendant is essential, it must also be shown that the precursors were subject to the defendant’s “dominion or control” as well as other incriminating facts and circumstances. Id.
¶ 12. In the case sub judice, as was the case in Kerns, the evidence presented to the jury was more than enough to support a finding of constructive possession. Ren-froe testified that the initial smell he encountered when he approached the bedroom window caused him to recoil in order to catch his breath. He testified that from his experience this smell was indicative of the odor surrounding a methamphetamine lab. He further testified that he witnessed Cook exit the smoked filled room carrying a plastic container and glass jar connected by a tube. Renfroe identified this contraption as a methamphetamine lab. Substances contained within these items were later identified by McMahon as ether, ephedrine, pseudoephedrine and hexanes. Additionally, the coffee filters found in the same room in which Cook ran contained methamphetamine and ephedrine pseu-doephedrine. The testimony of Jared Cook also established that Cook was “aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.” Jared Cook testified that while the methamphetamine lab and other drug paraphernalia was his and he had been manufacturing methamphetamine for three days *277 prior to Cook’s arrival, Cook arrived at the house approximately one hour before the deputies arrested the group. Jared Cook explained that Cook asked if Jared had anymore methamphetamine. When Jared responded that he did not, Cook requested more and was assisting Jared in its manufacture when law enforcement arrived. Weighing all evidence in favor of the verdict, we cannot say that allowing the jury’s verdict to stand would amount to an unconscionable injustice. Therefore, this issue is without merit.
III. WHETHER THE COURT ERRED IN OVERRULING THE DEFENDANT’S OBJECTION TO LEADING.
¶ 13. Our standard of review regarding this issue is clear. The decision of a trial court to allow leading questions will only be overturned if it is determined that the trial court abused his discretion. Brassfield v. State, 905 So.2d 754(¶ 14) (Miss.Ct.App.2004). Furthermore, the trial court’s abuse of discretion must prejudice the complaining party in order to warrant reversal. Palmer v. State, 427 So.2d 111, 115 (Miss.1983). “When error involves the admission or exclusion of evidence, we, sitting as an appellate court, will not reverse unless the error adversely affects a substantial right of a party.” Stallworth v. State, 797 So.2d 905(¶ 8) (Miss.2001).
¶ 14. Cook argues that the trial court erred in overruling his objection that the State was leading Renfroe during the following exchange:
Q. When you arrived at 621 Morton/Rankin Road, did you or on the way prior to arriving, did you talk about the possibility of — uh—needing to cover all the entrances to the house because Jared Cook might run or something?
[DEFENSE]: Your honor, I’m going to object to that.
A. Yes, we did.
BY THE COURT: Overruled.
Cook fails to show how allowing the above question prejudiced his case or adversely affected a substantial right he enjoyed. The question at issue inquired about Ren-froe’s conversation with his fellow deputies regarding the flight risk of someone other than Cook. We fail to see how allowing the State to proceed amounted to an abuse of discretion.
IV. WHETHER THE COURT ERRED IN SUSTAINING THE STATE’S OBJECTION DURING COOK’S CROSS-EXAMINATION OF DEPUTY RENFROE.
¶ 15. Cook’s last argument is that the trial court erred in sustaining the State objection to relevancy concerning the following line of questioning during cross-examination of Renfroe by Cook’s attorney:
Q. Okay. Did you ever present the— the arrest warrant to Jared or Ms. Cook — Ms. Bennie[Bernie] Cook?
A. Uh — Jared Cook.
Q. Okay. Was that prior to his arrest or afterward when you got him down to the station?
A. After.
Q. Okay. Uh — was he allowed to keep a copy of that?
A. Uh — no, sir. It’s all turned over to the jail.
Q. Okay. Now let’s get back to when you actually got out at the — y’all been having trouble with Jared before?
A. Yes, sir.
Q. What — what type of trouble have you had?
*278 BY MR. BROOKS: Your Honor, we’re going to object. That’s not relevant to this case.
BY THE COURT: What you going into?
BY MR. MANGUM: Uh — Judge, I was — I—I can cover that with another witness.
BY THE COURT: Objection’s sustained.
¶ 16. Rule 103 of the Mississippi Rules of Evidence states, in pertinent part,
(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
[[Image here]]
(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
While the trial court attempted to prompt Mangum into a proffer, not only was no offer of proof forthcoming, but the line of questioning was voluntarily abandoned. Notwithstanding the lack of an offer of proof and issue of abandonment, the most logical reason for questioning Renfroe about Jared Cook’s past criminal exploits is to introduce to the jury Jared Cook’s criminal nature in an attempt to impeach his testimony and destroy his credibility. Having no proffer in the record to show otherwise, we must assume this was the intent of Cook’s line of questioning. That being the case, we find that the following colloquy between Mangum and Jared Cook satisfies this intent:
Q. Okay. You’ve been cooking dope there for a while?
A. Yes, sir.
Q. Okay. You’ve been — you’ve been on meth for a while?
A. Yes, sir.
Q. Uh — you—
BY MR. MANGUM: your Honor, just one moment.
Q. I knew I picked this up for a reason. You’ve been convicted of drug-related charges in the past?
A. Uh — I was charged with drug-related charges.
Q. And what charges were those?
A. Man — conspiracy—
BY MR. BROOKS: Your Honor, object to the charges. He can ask him about convictions.
BY THE COURT: Sustained.
Q. Have you ever testified against anybody else in a case — drug case?
A. No, sir.
Q. Have you ever been a confidential informant?
A. Yes, sir.
Q. Okay. Was that to — what was that for? Why did you do that?
A. Drug charges.
Q. On you?
A. Yes, sir.
Q. Okay. So in — in return for getting off these drugs charges, you rolled on somebody else?
A. Yes, sir.
Q. Okay. And that benefitted you?
A. Yes, sir.
Q. Okay. And in this circumstance you cooked the drugs?
A. Yes, sir.
Q. Um — and you got a significantly lower sentence because you pled guilty and offered to testify against him, right?
A. Yes, sir.
*279 Q. Now you were on methadone at the time, weren’t you?
A. Yes, sir.
Q. Uh — does methadone affect you [sic] ability to remember things?
A. De — depends on how much I take.
Q. Okay. Were you — were you on a lot of it during this time?
A. That night I had shot some dilau-dids.
Q. Some what?
A. Dilaudids. I was out of methadone and I shot some dilaudids. That’s the needle they found.
As such, this issue is without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF CONVICTION OF POSSESSION OF PRECURSOR CHEMICALS WITH INTENT TO MANUFACTURE METHAMPHETAMINE AS A HABITUAL OFFENDER AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE BENEFIT OF PAROLE, SUSPENSION OR REDUCTION OF SENTENCE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.